Case No. 22-2289

# United States Court of Appeals

*for the*

# Third Circuit

———————————

WINN-DIXIE STORES, INC.; BI-LO HOLDINGS, LLC,
*Appellants*

– v. –

EASTERN MUSHROOM MARKETING COOPERATIVE, INC.; ROBERT A. FERANTO, JR., t/a Bella Mushroom Farms; BROWNSTONE MUSHROOM FARMS, INC.; TO-JO FRESH MUSHROOMS, INC.; CARDILE MUSHROOMS, INC.; CARDILE BROS.  MUSHROOMS PACKAGING; COUNTRY FRESH MUSHROOM CO.; FOREST MUSHROOM, INC.; FRANKLIN FARMS, INC.; GINO GASPARI & SONS, INC.; GASPARI BROS. INC.; GIORGI MUSHROOM COMPANY; GIORGIO FOODS, INC.; KAOLIN MUSHROOM FARMS, INC.; SOUTH MILL MUSHROOM SALES, INC.; LRP MUSHROOMS INC.; LRP-M MUSHROOMS LLC; LEONE PIZZINI AND SON, INC.; MODERN MUSHROOMS FARMS, INC.; SHER-ROCKEE MUSHROOM FARM; C & C CARRIAGE MUSHROOM CO.; OAKSHIRE MUSHROOM FARM, INC.; PHILLIPS MUSHROOM FARMS, INC.; HARVEST FRESH FARMS, INC.; LOUIS M. MARSON, JR., INC.; MARIO CUTONE MUSHROOM CO., INC.; M.D. BASCIANI & SONS, INC.; MONTEREY MUSHROOMS, INC.; MASHA & TOTO, INC., t/a M&T Mushrooms; W & P MUSHROOM, INC.; MUSHROOM ALLIANCE, INC.; CREEKSIDE MUSHROOMS LTD; J-M FARMS, INC.; UNITED MUSHROOM FARMS COOPERATIVE, INC.; JOHN PIA; MICHAEL PIA.

———————————

ON APPEAL FROM FINAL JUDGMENT ENTERED BY THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————

## APPELLEES' BRIEF

WILLIAM A. DESTEFANO
TERRI A. PAWELSKI
MATTHEW C. BRUNELLI
STEVENS & LEE, P.C.
1500 Market Street – East Tower, 18th Floor
Philadelphia, PA 19102
(610) 205 6006
william.destefano@stevenslee.com

# United States Court of Appeals for the Third Circuit

## Corporate Disclosure Statement and
## Statement of Financial Interest

No. 22-22898
_____

Winn Dixie Stores, Inc et ak

v.

Eastern Mushroom Marketing Cooperative et al

### Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, <u>Eastern Mushroom Marketing Cooperative, et al</u>
makes the following disclosure:                                                          (Name of Party)

    1) For non-governmental corporate parties please list all parent corporations: See attached list of additional Appellees
Giorgi Mushroom Company's partent is Giorgi Global Inc.

    2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:
NONE

    3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:
NONE

    4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.
N/A

_____          Dated: _____
(Signature of Counsel or Party)

Additional Appellees Represented by same counsel

Brownstone Mushroom Farms, Inc.
C&C Carriage Mushroom Co.
Country Fresh Mushrooms
Gino Gaspari & Sons, Inc.
Giorgi Mushroom Company
Kaolin Mushroom Farms, Inc.
South Mill Mushroom Sales, Inc.
Leone Pizzini and Sons Inc.
Louis M. Marson Jr. Inc.
Modern Mushroom Farms Inc.
Monterey Mushrooms, Inc.
Phillips Mushrooms, Inc.
To-Jo Fresh Mushrooms, Inc.
Oakshire Mushroom Farm, Inc.

# **TABLE OF CONTENTS**

**Page**

COUNTER STATEMENT OF ISSUES AND STANDARD OF REVIEW
AS TO EACH ISSUE ...................................................................................1

STATEMENT OF RELATED CASES...........................................................7

COUNTER STATEMENT OF THE CASE....................................................8

SUMMARY OF ARGUMENT ....................................................................19

ARGUMENTS ............................................................................................21

I.     WINN-DIXIE WAIVED OR FAILED TO PRESERVE ITS
       ARGUMENTS THAT THE DISTRICT COURT ABUSED ITS
       DISCRETION IN DENYING ITS RULE 59 MOTION FOR A NEW
       TRIAL, BUT EVEN IF THERE WERE NO WAIVER OR
       PRESERVATION PROBLEMS WITH WINN-DIXIE'S
       ARGUMENTS, THE DISTRICT COURT DID NOT ABUSE ITS
       DISCRETION IN DENYING WINN-DIXIE'S RULE 59
       MOTION…. .........................................................................................21

       (A)  Winn-Dixie Waived its Weight of the Evidence Argument as
            to Questions 2 and 4 on the Verdict Form by its Failure to
            Move for a Directed Verdict Under Fed. R. Civ. P. 50(a)
            before the Jury Retired to Deliberate..................................21

       (B)  Even if Winn-Dixie's Weight of the Evidence Argument was
            not waived, the Jury's Findings as to Questions 2 and 4 Were
            Supported by Sufficient Evidence. .....................................23

       (C)  Winn-Dixie's Inconsistency Argument as to Question 2 Was
            Not Preserved because Winn-Dixie Did Not Raise this
            Argument before the Jury Was Discharged. ........................28

       (D)  Even if Winn-Dixie's Inconsistency Argument as to
            Question 2 was properly Preserved for Appellate Review, the
            Jury's Answers to Question 2 were Internally Consistent and
            Consistent with the Jury's Finding that there was an
            Overarching Conspiracy. ....................................................30

       (E)  Winn-Dixie failed to Preserve its Argument that the Jury did
            not follow the District Court's Instructions pertaining to

(i)

# TABLE OF CONTENTS
## (cont'd)

Page

Questions 2 and 4 because it did not file a Motion under Fed. R. Civ. P. 50(a), nor did it raise this Argument before the Jury was discharged. ...................................................................32

(F)    Even if Winn-Dixie Preserved this Argument there is No Evidence Supporting Winn Dixie's Claim that the Jury did not Follow the District Court's Instructions pertaining to Questions 2 and 4. .............................................................33

II.    WINN-DIXIE WAIVED OR DID NOT PRESERVE ITS CHALLENGE TO THE DISTRICT COURT PRE-TRIAL RULING ON THE APPLICATION OF THE QUICK LOOK RULE OF REASON ANALYSIS AND IN ANY EVENT, THE DISTRICT COURT CORRECTLY DENIED WINN-DIXIE'S MOTION ....................39

(A)    Winn-Dixie did not Preserve its Argument on the Application of the Quick Look Mode of Antitrust Analysis for Appellate Review and Winn-Dixie Effectively Abandoned its Quick Look Argument by not timely Objecting to the Traditional Rule of Reason Instruction Given by the Court. ...............................39

(B)    The District Court's Pre-Trial Ruling Deciding a Mixed Question of Law and Fact was Correct. ............................................42

III.    THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN ADMITTING EVIDENCE RELEVANT TO THE DEFENDANTS' SIZE, PROFITABILITY AND FINANCIAL CONDITION FOR PURPOSES OTHER THAN ARGUING PROCOMPETITIVE BENEFITS AND COUNSEL DID NOT ENGAGE IN ANY MISCONDUCT IN ELICITING THIS EVIDENCE NOR WAS THE EVIDENCE REASONABLY LIKELY TO INFLUENCE A FINDING THAT THE JURY DID NOT HAVE TO MAKE ...................................................................................44

CONCLUSION ...................................................................................53

REQUIRED CERTIFICATIONS .......................................................54-56

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Barrett v. Fields*,
 924 F. Supp. 1063 (D. Kan. 1996) ................................................. 37-38

*Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999) ....................................... 41-42

*Debjo Sales, Inc. v. Houghton Mifflin Harcourt Publishing Co.*,
 2015 WL 1969380 (D.N.J. 2015) ................................................. 35-36

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
 610 F 3d 820 (3d Cir. 2010) ............................................................. 5, 41

*Fineman v. Armstrong World Indus. Inc.*,
 980 F.2d 171 (3d Cir.1992) .................................................................. 45

*Frank C. Pollara Group, LLC v. Ocean View Investment Holding,
 LLC*,
 784 F.3d 177 (3d Cir. 2015) ........................................................... *passim*

*Giant Eagle, Inc. v. EMMC, et al.*,
 EDPA Dkt. No. 06-cv-03523 ................................................................. 7

*Gordon v. Lewiston Hospital*,
 423 F.3d 184 (3d Cir. 2005) ................................................................ 35

*Government Employees Retirement System of Virgin Islands v.
 Government of Virgin Islands*,
 995 F.3d 66 ........................................................................................... 5

*Graphic Prods. Distribs. v. Intek Corp.*,
 717 F.2d 1560 (11th Cir. 1983) .................................................... 34, 37

*Greenleaf v. Garlock, Inc.*,
 172 F.3d 352 (3d Cir. 1999) ......................................................... *passim*

*In re Mushroom Direct Purchaser Antitrust Litigation*,
 EDPA Dkt. No. 06-cv-00620, 319 F.R.D. 158 (E.D.Pa. 2016) ........................ 7,8

*Neely v. Club Med Management Services, Inc.*
   F.3d 166, 199-200 (3d Cir. 1995) .......................................................... 3

*Ortiz v. Jordan,*
   562 U.S. 180 (2011) ................................................................... 2, 39

*In re Processed Eggs Antitrust Litig,*
   206 F. Supp. 3d. 1043 (E.D. Pa. 2016) ............................................. 42

*Publix Super Markets, Inc. v. EMMC, et al.,*
   EDPA Dkt. No. 06-cv-00932 and 3 .................................................. 7

*Reazin v. Blue Cross & Blue Shield,*
   899 F.2d 951 (10th Cir. 1990) ......................................................... 37

*In re Se, Milk Antitrust Litig.,*
   739 F. 3d 262 (6th Cir. 2014) ......................................................... 43

*U.S. v. Brown University,*
   5 F.3d 658 (3d Cir. 1993) .............................................................. 34

*Waddington North American, Inc. v. Sabert Corporation,*
   2011 U.S. Dist. LEXIS 86632 (D.N.J. Aug. 5, 2011) ................................... 49-51

*Wilk v. Am. Med. Ass'n,*
   895 F.2d 352 (7th Cir. 1990) ......................................................... 37

*Williamson v. Consol. Rail Corp.,*
   926 F.2d 1344 (3d Cir, 1991) ........................................................... 4

*Yohannon v. Keene Corp. et al.,*
   924 F.2d 1255 (3d Cir. 1991) ....................................................... 2, 21-22

**Rules:**

Fed. R. Civ. P. 49 ..........................................................................15, 29

Fed. R. Civ. P. 50 ..........................................................................*passim*

Fed. R. Civ. P. 51 ..................................................................2, 3, 41, 42

Fed. R. Civ. P. 59 ..........................................................................*passim*

## COUNTER STATEMENT OF ISSUES AND
## STANDARD OF REVIEW AS TO EACH ISSUE

1. **Whether Winn-Dixie waived or failed to preserve any of the following arguments.**

   (a) **The jury's answers to Verdict Form Question 2 (participation in the overarching conspiracy) ("Question 2") and/or Verdict Form Question 4 (anticompetitive effects of the overarching conspiracy) ("Question 4") were not supported by the evidence presented at trial.**

   *Improperly raised below by Winn-Dixie's Rule 59 motion. A2787.*

   (b) **The jury's answers to Question 2 were inconsistent with the general verdict in favor of all remaining defendants and with the jury's "yes" answer to Question 1 (existence of the single overarching conspiracy).**

   *Improperly raised below by Winn-Dixie's Rule 59 motion. A2787.*

   (c) **Either because of confusion or intentionally, the jury did not follow the District Court's instructions as to Questions 2 and 4.**

   *Improperly raised below by Winn-Dixie's Rule 59 motion.  A2787.*

   (d) **The District Court erred by denying Winn-Dixie's pre-trial motion to apply the Quick Look mode of rule of reason antitrust analysis to the alleged overarching Sherman Act Conspiracy.**

1

## STANDARD OF REVIEW AS TO ISSUE NO. 1

**As to Issues 1(a) and 1(c)**.  The failure of a party to move for judgment as a matter of law at the close of all evidence at trial under Rule 50(a) before the jury retired to deliberate, wholly waives the right to mount any post trial attack on the sufficiency of the evidence, whether under Rule 50(b) or Rule 59.  *Greenleaf v. Garlock, Inc.,* 172 F.3d 352, 364 (3d Cir. 1999); *Yohannon v. Keene Corp.,* 924 F2d 1255, 1262 (3d Cir. 1991).

**As to Issue 1(b)**.  Motions for a new trial grounded on allegedly inconsistent findings made by the jury pursuant to written questions must be preserved by raising the issue of inconsistency before the jury is dismissed.  *Frank C. Pollara Group, LLC v. Ocean View Investment Holding, LLC,* 784 F.3d 177, 191 (3d Cir. 2015).

**As to Issue 1(d)**.  Where pre-trial rulings involve mixed questions of law and fact, they are interlocutory in nature and are superseded by the evidence adduced at trial.  Thus, the movant must preserve its argument for appeal pursuant to Rule 50(a) and (b) in order to give the court an opportunity to review its pre-trial decision in light of a complete factual record.  *Ortiz v. Jordan*, 562 U.S. 180 (2011)*; Frank C. Pollara Group LLC,* 784 F.3d at 185-87.  The proponent of a specific mode of antitrust analysis forfeits its right to seek appellate review of a jury instruction inconsistent with the requested mode of analysis unless it objects and assigns error to the inconsistent jury instruction under Fed. R. Civ. P. 51(c) and (d) unless the

2

appeals court finds that it was plain error to give the instruction.  Fed. R. Civ. P. 51(c)

(d); *Neely v. Club Med Management Services, Inc.* F.3d 166, 199-200 (3d Cir. 1995).

**2. Whether the District Court properly exercised its discretion in denying Winn-Dixie's post trial motion under Fed. R. Civ. P. 59 where:**

**(a) The jury's answers to Verdict Form Question 2 (participation in the overarching conspiracy) ("Question 2") and/or Verdict Form Question 4 (anticompetitive effects of the overarching conspiracy) ("Question 4") were supported by the substantial evidence presented at trial.***

*Raised below by Winn-Dixie's Rule 59 motion. A2787.*

**(b) The jury's answers to Question 2 were consistent with the general verdict in favor of all remaining defendants and with the jury's finding as to Question 1 that there was an overarching conspiracy.**

*Raised below by Winn-Dixie's Rule 59 motion. A2787.*

**(c) There is no evidence supporting Winn Dixie's claim that the jury failed to follow the District Courts instructions relevant to Verdict Form Questions 2 and 4.**

*Raised below by Winn-Dixie's Rule 59 motion.  A2787.*

**\* The Verdict Form (A2498) is also attached hereto as Addendum 1 for the Court's convenient reference.**

3

## STANDARD OF REVIEW AS TO ISSUE NO. 2

This Court reviews a District Court's resolution of a motion for a new trial under Rule 59 for abuse of discretion. The decision to grant or deny a motion for a new trial is within the sound discretion of the trial court. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). "[N]ew trials because the verdict is against the weight of the evidence are proper only were the record shows that the jury's verdict resulted in a miscarriage of justice, or where the verdict, on the record, cries out to be overturned, or shocks our conscience." *Id*. at 1353. Motions for a new trial grounded on the weight of the evidence are disfavored as they invade the province of the jury granted by the Seventh Amendment. *Id* at 1348. Considerable deference is given to the District Court's denial of a motion for new trial based on the weight of the evidence as the trial judge observes the witnesses and follows the trial in a way that cannot be replicated by reviewing a cold record. *Williamson,* 926 F.2d at 1353 (*citing Roebuck v. Drexel Univ.*, 852 F. 2d 715, 735 (3d Cir. 1988)).

4

**3. Whether the District Court erred by denying Winn-Dixie's pre-trial motion to apply the Quick Look mode of rule of reason antitrust analysis to the alleged overarching Sherman Act Conspiracy.**

*Raised but improperly preserved below by Winn-Dixie's pre-trial motion for the application of the Quick-Look rule of reason analysis to the alleged overarching Sherman Act conspiracy A16-17*

## STANDARD OF REVIEW AS TO ISSUE NO. 3

The District Court's selection of a mode of antitrust analysis is a question of law over which this Court exercises plenary review. *Deutscher Tennis Bund v. ATP Tour, Inc*. 610 F.3d 820, at n.7 (*citing Arizona v. Maricopa County Med. Soc'y*, 437 U.S. 332, 337, n.3 (1982). However, the district's court's factual findings on a pre-trial motion regarding the mode of antitrust analysis are subject to a clearly erroneous standard of review. *See Government Employees Retirement System of Virgin Islands v. Government of Virgin Islands,* 995 F.3d 66, 78 (3d Cir. 2021) (*citing U.S. Bank Nat. Ass'n ex rel. CW Capital Asset Management LLC v. Village at Lakeridge, LLC,* 138 S. Ct. 960, 967-69 (2018)).

5

**4. Whether the District Court erred in admitting evidence pertaining to the defendants' size, profitability or financial condition as relevant to issues other than whether the alleged overarching conspiracy involved certain pro-competitive benefits. If so, whether defendants' counsel engaged in misconduct by eliciting this evidence and whether it was reasonably probable that the jury's verdict was influenced by the alleged misconduct.**

*Improperly raised below by Winn-Dixie's after-the-fact objections to the admission of the evidence relevant to financial condition of defendants during trial. A301- 02, A1013-16 and A2248-50.*

## STANDARD OF REVIEW AS TO ISSUE NO. 4

Evidentiary rulings by the District Court are reviewed under an abuse of discretion standard. If the Court finds that the District Court abused its discretion in admitting the evidence at issue, the Court then reviews the trial transcript to determine whether there was misconduct by counsel in eliciting the evidence, whether the admission of the evidence unfairly prejudiced the objecting party, and whether it was reasonably probable that the jury's verdict was influenced by admission of the evidence at issue. *Greenleaf,* 174 F. 3d 352 at 363-64.

6

## STATEMENT OF RELATED CASES

This appeal is related to three other cases involving the same defendants in the United States District Court for the Eastern District Pennsylvania:  1) *In re Mushroom Direct Purchaser Antitrust Litigation*, EDPA Dkt. No. 06-cv-00620; 2) *Publix Super Markets, Inc. v. EMMC, et al.*, EDPA Dkt. No. 06-cv-00932 and 3) *Giant Eagle, Inc. v. EMMC, et al.*, EDPA Dkt. No. 06-cv-03523.   As noted in Appellant's Statement of Related Cases, Appeals to this Court from interlocutory orders by the District Court in *In re Mushroom Direct Purchaser Antitrust Litigation*, were docketed in this Court at:   09-2257 and 09-2258; 14-8134 and 14-8135; 16-8079 and 16-8080 and 19-2114.  However, the Court declined to reach the merits of these Appeals, and Case No. 19-2114 was withdrawn.

SL1 1815129v2 107141.00002

## COUNTER STATEMENT OF THE CASE

In late 2015, Winn-Dixie Stores Inc. ("Winn-Dixie ")—a grocery chain headquartered in Florida, operating about 500 supermarkets in Florida and a few other Southeastern States, (along with its affiliate Bi-Lo Holdings LLC. "Bi-Lo")—filed a Complaint in the District Court for the Eastern District of Pennsylvania. A35 at Dkt. No. 1. The Complaint was essentially a carbon copy of a Consolidated Amended Class Action Complaint against the same defendants filed in the District Court in 2007 in *In re Mushroom Direct Purchaser Antitrust Litigation* which itself had been consolidated for pretrial and trial purposes with individual Complaints filed by two other large supermarket chains stores, Publix Supermarkets, Inc. and Giant Eagle, Inc. A42 at Dkt. No. 66.

Since Winn-Dixie and Bi-Lo alleged that they had purchased mushrooms directly from one or more of the defendants during the time period at issue (2001-2008), they appeared to be members of the putative class. Thus, the District Court denied defendants' motions to dismiss the complaint with leave to re-file these motions if and when Winn-Dixie and Bi-Lo exercised their rights to opt out of the Class Action. A41 at Dkt. No. 62. The District Court certified a class of direct purchasers in 2016. *See In re Mushroom Direct Purchaser Class Litig.,* 319 F.R.D. 158 (E.D. Pa. 2016). Thereafter, Winn-Dixie and Bi-Lo opted out of the Class Action.

SL1 1815129v2 107141.00002

The District Court dismissed their 2015 complaint with leave to file an amended complaint. A44 at Dkt. No. 88.   In early 2019, Winn-Dixie filed an Amended Complaint against the same defendants making essentially the same allegations.  The 2019 Amended Complaint alleged that the Eastern Mushroom Marketing Cooperative ("EMMC") engaged in a single overarching conspiracy with its member mushroom growers and their downstream packaging and distribution companies, between 2001 and 2008, in violation of §1 of the Sherman Act, to raise, fix, stabilize or maintain prices for *agaricus* (common white or brown) mushrooms by: 1) circulating minimum price lists along with rules and regulations requiring the member companies to uniformly charge those prices to all customers; and 2) acquiring various closed or bankrupt mushroom farms and then selling the underlying real estate with deed restrictions precluding their future use as mushroom farms in order to reduce the overall supply of *agaricus* mushrooms.  These activities had been referred to by the EMMC respectively as the Minimum Pricing Policy and Supply Control Program.  *See* Amended Complaint A45 at Dkt. No.  96.[1]

---

[1]  The Amended Complaint also alleged that the Supply Control Program constituted an attempt to monopolize the market for *agaricus* mushrooms in violation of §2 of the Sherman Act and/or violated §7 of the Clayton Act precluding acquisitions that substantially lessen competition or create a monopoly. Prior to trial, Winn-Dixie dropped these claims—as had the Class and Opt-Out Plaintiffs—and proceeded to trial only on its claims under §1 of the Sherman Act.

While it was originally contemplated by the District Court that the antitrust claims made by all Plaintiffs would be tried jointly, the District Court severed these cases for trial purposes, with the Class Action scheduled for trial in May 2019 and the claims by Publix and Giant Eagle scheduled for trial in March 2020. Initially delayed by the COVID Pandemic, Winn-Dixie's trial began on February 28, 2022.[2]

Prior to trial, the parties filed several pre-trial motions styled as motions *in limine.* The District Court resolved these pre-trial motions by Omnibus Order dated February 10, 2022. A12-19. The District Court's ruling on three of these pre-trial motions are relevant to this appeal. Foremost, Winn-Dixie filed a motion requesting a ruling that as a matter of law, the District Court should apply the so called Quick

---

[2] As discussed in Appellee's Motion docketed in this case at No. 27, the District Court dismissed Winn-Dixie's and Bi-Lo's claims against several defendants prior to trial. Moreover, Winn Dixie's claims against several other defendants were dismissed at trial pursuant to largely uncontested Rule 50 motions. These dismissals left only 16 of the original defendants for inclusion on the Verdict Form prepared by the District Court (A2498 *et. seq.*) to which Winn Dixie did not object. A2298. In addition, the District Court dismissed Bi-Lo's claims for money damages by Order of September 1, 2020 (A67 at Dkt. No. 299) but left standing Bi-Lo's claim for injunctive relief (to require defendants to take affirmative steps to dissipate the continuing effects of their unlawful conduct). *See* Amended Complaint, Dkt. No. 96 at p. 142. However, this request for equitable relief had already been mooted by Winn-Dixie's and Bi-Lo's expert report finding that damages in the form of "overcharges" did not extend beyond 2010. In any event, Bi-Lo essentially disappeared as a plaintiff in this case following the court's Order of Sept. 1, 2020, and Winn-Dixie proceeded to trial without Bi-Lo and its identical claim for equitable relief.

Look mode of rule of reason analysis to the EMMC's minimum pricing policy. This motion involved mixed questions of law and fact more akin to a pre-trial motion for summary judgment rather than a traditional *in limine* motion. *See* A16 – 17. Winn-Dixie did not renew this motion by making a Rule 50 motion at trial. Moreover, Winn-Dixie did not object to the jury instruction given by the court pursuant to the so called "full blown" rule of reason analysis.

Second, defendants filed an *in limine* motion requesting the court to reconsider a previous *in limine* ruling in the Publix/Giant Eagle precluding argument that increased producer prices, increased producer profits, decreased producer losses or helping firms stay in operation, constitute pro-competitive benefits. The District Court declined to reconsider its earlier ruling and, therefore, the defendants were precluded from arguing that the above-mentioned consequences were pro-competitive benefits at trial. *See* A16 at No. 6.

Third—and not discussed by Winn-Dixie in its opening brief—the District Court denied Winn-Dixie's motion *in limine* to preclude evidence of the defendants' size, profitability or financial condition for purposes other than arguing that Winn-Dixie is not entitled to judgment in this case. A18 at No. 10.

Prior to trial, the parties submitted a Joint Stipulation regarding the issues and arguments to be presented at trial. This Joint Stipulation was limited to Winn-Dixie's claims under §1 of the Sherman Act. *See* A83 at Dkt. No. 424.

11

Trial of Winn-Dixie's §1 overarching conspiracy claim began with jury selection on February 28, 2022 and continued for 15 trial days, ending on March 22, 2022.

Winn-Dixie's case-in-chief included 13 fact witnesses, all of whom were corporate representatives of the defendants. These witnesses were followed by fact and opinion testimony by an Expert Ph.D. economist, Keith Leffler, who discussed the essential elements of Winn-Dixie's Sherman Act claims, and, pursuant to a regression model, opined that Winn-Dixie experienced "overcharges" for mushrooms is purchased between 2001 and 2010 that it would not have incurred "but for" the EMMC's minimum pricing policy. *See* A1591. Significantly, Dr. Leffler did not attribute any of the overcharges in the relevant geographic market to the EMMC's Supply Control Program, which involved the acquisition of bankrupt mushroom farms and subsequent sale of the underlying deed restricted real estate. *See* A1598-99. The Supply Control Program was the second prong of the alleged overarching conspiracy claimed by Winn-Dixie to have violated §1 of the Sherman Act.

Defendants' case-in-chief included live testimony from 5 representatives of defendant mushroom farmers and deposition excerpts from two mushroom growers who were former EMMC members. Defendants' Expert, Jesse David, a Ph.D. economist and econometrician, was called as a witness following that testimony.

12

Dr. David discussed market conditions in the relevant geographic market. He testified that there was substantial empirical evidence showing that the remaining defendants in this case, including the EMMC, did not have sufficient market power to impose a sustained price increase in the relevant geographic market. *See* A1954-55, 1957.

Moreover, all of the corporate representatives of the remaining defendants testified that the rules and regulations embodied in the EMMC's minimum pricing policy were not consistently followed for several reasons including: EMMC members invoked certain exceptions to the minimum price rules; were forced to charge prices below the minimums by competition from Canadian and other growers who never joined the EMMC; or the numerous EMMC members who resigned beginning shortly after the EMMC was formed. Moreover, EMMC member companies frequently gained and lost customers to each other based on price competition and finally in 2005 the EMMC suspended and abandoned the minimum pricing policy because it was ineffective. A597-98.[3]

---

[3] *See also* A562 (the EMMC members realized they could not control the entire market), A571 (Canadian mushrooms were sold throughout the entire U.S.), A597-98 (minimum pricing was suspended in 2005 as it was largely ineffective; growers did not "have the power to market the product against the buying power of the purchasers"), A604-05 (explaining that pre-existing contracts, the meet-not-beat policy, and permissibility issues eviscerated the minimum pricing policy); A602-03 (the EMMC recognized that it was impossible to follow the pricing policy); A625 (explaining that mushroom buyers had little control over the

13

At the close of all evidence, defendants made an oral Rule 50(a) motion to

dismiss Winn-Dixie's claims against several defendant companies and individuals

---

grower's pricing because of perishability); A1868-71 (Giorgi Mushroom Co. gained and lost accounts to/from EMMC members); A1870-71 (there was substantial price competition among EMMC members in the years prior to EMMC suspension of minimum pricing policy); A1871 (price was the overwhelming factor in competition), A1888-89 (explaining that minimum pricing could not be followed because there was too much pressure to move product and you could not afford to lose customers); A1441 (customer's use of reverse auctions and customer demand prevented adherence to the minimum pricing policy); A1441-42 (Modern did not hesitate to charge below the minimum prices in order to gain a new customer or keep an existing customer); A1446 (same); A1444-45 (members resigned shortly after the EMMC was formed including Cutone, M&T, Kitchen Pride, JM, the Mushroom Alliance and Creekside); A1452-53 (after the 2003-2005 time period, the EMMC continued to lose members including Modern, Basciani, Monterey and Franklin); A454 (EMMC members did not comply with minimum pricing), A471-73 (same); A474-75 (meet-not-beat exception allowed members to price competitively, EMMC members competed among themselves and against non-EMMC members); A488-89 (there was always competition within the EMMC because of noncompliance issues, it was a "free-for-all"); A400 (discussing Canadian competition); A291 (no members followed the EMMC rules, including his company); A309 (because of the industry's competitive nature, there were always people not complying with the minimum pricing); A402 (members resigned because of non-compliance issues, members lost business to other EMMC members); A403 (EMMC members undercut each other); A430 (mushroom perishability incentivized EMMC members to not follow the minimum pricing policy); A430-31 (meet-not-beat policy allowed members to price below the minimum prices to maintain an account); A1203 (Gino Gaspari & Sons, Inc. lost its two biggest customers to other EMMC members due to pricing); A670-71 (confirming that his company had no alternative but to commonly sell mushrooms below the minimums); A1336 (minimum pricing was not relevant to Mr. Schroeder's business); A1221-1222 (explaining that while the EMMC members may have initially consented to a certain pricing rule during EMMC meetings, their consent soon fell apart. "[P]eople would literally call driving home from the meeting saying, I just realized that [the pricing] doesn't fit this scenario, or that scenario, whatever the case may be.".

14

on whose behalf Winn-Dixie's claims had not previously been dismissed. Without objection, the District Court dismissed Winn-Dixie's claims against Forrest Mushrooms, Giorgio Foods, Gaspari Bros. Inc., Sher-Rockee Mushroom Farm, John Pia and Michael Pia. A2156-57. Over Winn-Dixie's objection, the District Court dismissed all claims against Robert A. Feranto Jr. d/b/a Bella Mushroom Farm. Winn-Dixie does not appeal from these orders. A2158-62.

The District Court prepared written jury instructions adapted from proposed instructions submitted by the parties along with a proposed Verdict Form. A 2498 *et seq.*[4] Notably, Winn-Dixie did not submit a proposed instruction premised on the Quick Look Doctrine. A86 at Dkt. No. 438. Moreover, during the charge conference Winn-Dixie did not object to the proposed jury instructions now at issue,

---

[4] The Verdict Form was adapted under Fed. R. Civ. P. 49(b) from those used at two trials in the Eastern District of Pennsylvania involving alleged overarching Sherman Act conspiracy claims against a different agricultural cooperative and its member companies, *In re Processed Egg Products Antitrust Litigation*, Civil Action No. 08-md-02002, in which judgments pursuant to general verdicts in favor of defendants were affirmed on appeal. *See In re Processed Egg Products Antitrust Litigation*, 962 F.3d 719 (3d Cir. 2020), *In re Processed Egg Products Antitrust Litigation*, 850 Fed. Appx. 142 (3d Cir. 2021). As in the *Egg Products* cases, the Verdict Form here contained written questions involving mixed issues of fact and law and was tailored to address whether Plaintiff carried its burden of proof on each element of Winn-Dixie's claim under §1 of the Sherman Act. The District Court charged the jury on the legal standards applicable to each element of Plaintiff's claim and instructed it to cease deliberations if it answered "no" to Questions 1, 2 or 4. *See* Verdict at A2498-06 (copy attached as an addendum to this Brief for the Court's convenience).

15

relating to: 1) whether defendants participated in the single overarching conspiracy and 2) was the single overarching conspiracy anticompetitive. A2282, 2247. Nor did Winn-Dixie object to any of the written questions on the proposed verdict form. A2295, A2298. After the jury was charged, Winn-Dixie did not lodge an objection to any of the instructions upon which its appeal is based. A2474-75 (at the conclusion of the charge, no party lodged any objections).

The jury was charged on the 15th trial day and after less than 3 hours of deliberation, a unanimous 10 person jury returned a general verdict in favor of all remaining defendants and against Winn-Dixie. In reaching its decision, the jury answered 4 of the 7 written questions that sought a yes or no answer as to whether or not Winn-Dixie carried its burden of proof on each element of a private claim under §1 of the Sherman Act as evaluated under the rule of reason analysis. A2498. After the return of the jury's verdict form but before the jury was discharged, Winn-Dixie did not raise any issue or argument pertaining to any of the jury's answers, including that the answers. Specifically, Winn-Dixie did not claim that the jury's answers were internally inconsistent or that the jury did not follow or was confused by the District Court's instructions as to Question 2 or Question 4. *See* A2480-84.

On March 23, 2022, the District Court entered judgment individually pertaining to each of the questions the jury answered. A91 at Dkt. No. 494. On

16

April 7, 2022, the remaining defendants filed a motion to alter or amend the judgment to reflect a general verdict in their favor and against Winn-Dixie. A92 at Dkt. No. 498. On April 20, 2022, Winn-Dixie filed a motion for judgment notwithstanding the verdict under Fed. R. Civ. P 50(b) and for a new trial under Fed. R.Civ. P. 59. A92 (Dkt. No. 500).

On June 13, 2022 the District Court entered an order and memorandum denying Winn-Dixie's post-trial motions and entering an amended judgement as requested by defendants without opposition by Winn-Dixie. A92 at Dkt. No. 503.

On July 13, 2022, Winn-Dixie filed a Notice of Appeal in the District Court. The Notice of Appeal was also purportedly filed on behalf of Winn-Dixie's affiliated company, Bi-Lo. A1.

As noted by the court in denying Winn-Dixie's post-trial motions, Winn-Dixie waived its ability to file a Rule 50(b) motion attacking the sufficiency of the evidence because it failed to timely file a Rule 50(a) motion. A8-9. The court denied Winn-Dixie's Rule 59 motion, finding that the jury's answer to Question 4 on the Verdict Form was supported by substantial evidence, notwithstanding Winn-Dixie's argument that it adduced overwhelming evidence establishing that it satisfied the anticompetitive prong under the rule of reason. In this regard the District Court noted that "Plaintiff's arguments do not rise beyond merely wishing that the jury believed its side rather than defendant's." A10. The District Court further found

that the jury's answers to the written questions on the verdict form were not inconsistent and that the jury followed the court's instructions pertaining to the participation and anticompetitive effect elements of a §1 Sherman Act claim. A9-10. Winn-Dixie did not raise any arguments pertaining to the Quick Look Doctrine or to admission of evidence in purported violation of a pre-trial ruling as to pro-competitive benefits in its Rule 50(b) or Rule 59 motions. *See* A92 and Dkt. Nos. 500 and 502.

Winn Dixie filed its notice of appeal (A1) on July 13, 2022.

18

## SUMMARY OF ARGUMENT

First, the Court need not reach the merits of Winn-Dixie's arguments in support of its' Motion for a new trial under Rule 59 because: 1) Winn-Dixie waived or failed to preserve its right to challenge the jury's findings in response to Verdict Form Questions 2 and 4 based on the weight of the evidence by not moving under Fed. R. Civ. P. 50(a) before the jury retired to deliberate; and 2) Winn-Dixie did not preserve its inconsistency or its failure to follow instructions arguments by making these arguments before the jury was discharged.

Even if Winn-Dixie had preserved these arguments, however, the District Court properly exercised it discretion to deny Winn-Dixie's Motion for a new trial where 1) the jury's answers to written Questions 2 and 4 on the Verdict Form were supported by sufficient evidence; 2) these answers were internally consistent; 3) the District Court's instructions as to these questions were followed by the jury.

Second, the Court need not reach the merits of Winn-Dixie's argument regarding its motion to apply the Quick Look rule of reason analysis because Winn-Dixie failed to preserve an objection to the District Court's pre-trial ruling by 1) making a Rule 50(a) motion addressing the Quick Look mode of analysis following the close of the evidence at trial; or 2) not submitting a jury instruction applicable to the Quick Look mode of analysis and not objecting to the instruction actually given by the District Court under the traditional rule of reason mode of

19

analysis rather than the Quick Look mode of analysis.  Nevertheless, the District Court correctly denied Winn-Dixie's pre-trial motion for the application of the Quick Look rule of reason analysis to the overarching Sherman Act conspiracy.

Finally, the District Court properly exercised it discretion in admitting evidence at trial pertaining to the defendants' size, profitability or financial condition for purposes other than establishing pro-competitive benefits.  Further, the District Court instructed the jury that the increased producer prices, increased producer losses or helping farms stay in operation, could not be considered to be pro-competitive.  Thus, defendants' counsel did not engage in misconduct by eliciting evidence pertaining to the defendants' size, profitability, or financial condition.  Even if eliciting the permitted evidence can somehow be characterized as misconduct, the jury's verdict was not influenced by same, as the jury was properly instructed as to the prohibited pro-competitive benefits and in any event, did not have to reach the issue of procompetitive benefits in reaching its.[5]

---

[5] Winn-Dixie makes an additional argument that it does not include in its Summary of Argument.  *See* Appellant's Opening Brief at pages 35 – 37. Winn-Dixie argues that "[s]hould the Court consider entering a judgment [in Winn-Dixie's favor] notwithstanding the verdict it is important to note that there were no cognizable pro-competitive benefits...."  However, as noted by the District Court, Winn-Dixie waived its right to file a Rule 50(b) motion on this issue by failing to make a Rule 50(a) motion at the close of the evidence. A8-9.  Since Winn-Dixie did not properly preserve this argument below,  this argument has not been preserved for appellate review.

20

# ARGUMENT

**I. WINN-DIXIE WAIVED OR FAILED TO PRESERVE ITS ARGUMENTS THAT THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING ITS RULE 59 MOTION FOR A NEW TRIAL, BUT EVEN IF THERE WERE NO WAIVER OR PRESERVATIN PROBLEMS WITH WINN-DIXIE'S ARGUMENTS, THE DISRICT COURT PROPERLY EXERCISED ITS DISCRETION IN DENYING WINN-DIXIE'S RULE 59 MOTION FOR A NEW TRIAL**

**(A) Winn-Dixie Waived its Weight of the Evidence Argument as to Questions 2 and 4 on the Verdict Form by its Failure to Move for a Directed Verdict Under Fed. R. Civ. P. 50(a) before the Jury Retired to Deliberate.**

In this Circuit, a party "waives the right to mount any post-trial attack on the sufficiency of the evidence" when it fails "to move for a directed verdict at the close of all evidence." *Yohannon,* 924 F.2d at 1262.  Winn-Dixie failed to timely move for a directed verdict (A8-9) and, therefore, "wholly waive[d]" the right to now assert that the jury's verdict relating to participation was against the weight of the evidence. *Id*.

In *Greenleaf* 174 F.3d at 365., an asbestos product liability case, the Court acknowledged the Court's precedential ruling in *Yohannon,* 934 F.3d at 364, but carved out a narrow exception where there was substantial evidence of the absent defendants' liability to the Plaintiff as well as the cross claims asserted by the defendants against the absent defendants. But the absent defendants put on absolutely no countervailing evidence to support the jury's verdict in their favor.

21

Thus, the *Greenleaf* Court found plaintiffs' evidence "overwhelming" only because there was no contrary evidence presented by the absent defendants. Thus, the Court excused the cross claimant's failure to file a Rule 50(a) motion in order to address the manifest injustice created by the jury's verdict in favor of the absent defendants on the defendants' cross claims.    Here, by contrast, and as noted by the District Court, (*see* A9-10), there was ample evidence presented at trial by the remaining (who appeared at trial) to support the jury's answers to written Questions 2 and 4 on the Verdict Form. *See e.g. supra* at p. 13, n.3.

Although Winn-Dixie repeatedly characterizes its evidence relevant to the jury's answers to Questions 2 and 4 as "overwhelming," we submit that its Rule 59 motion for a new trial based on the weight of the evidence boils down to a classic attack on the evidence underlying the jury's response to Questions 2 and 4.  In short, Winn-Dixie argues that the jury's decision on participation (Question 2) and anticompetitive effects (Question 4) is not supported because a wealth of evidence established that Defendants participated in the conspiracy and that the conspiracy was anticompetitive.   Under these circumstances Winn-Dixie was obligated to timely move under Rule 50(a) to claim judgment be entered in its favor.  It did not do so, and, therefore waived the right to now claim entitlement to a new trial based on its purported weight of the evidence challenge.  *Yohannon*, 924 F.2d at 1262

(noting, the failure to timely file a Rule 50 motion precludes "any post-trial attack on the sufficiency of the evidence.").

**(B)  Even if Winn-Dixie's Weight of the Evidence Argument was not waived, the Jury's Findings as to Questions 2 and 4 Were Supported by Sufficient Evidence.**

Winn-Dixie's contention that overwhelming evidence as to participation undermines the jury's answers to Question 2, is fundamentally flawed.  Winn-Dixie fails to accurately describe and explain the jury's task and decision concerning Question 2.  To start, Question 2 did not ask the jury to determine whether each individual EMMC member participated in the underlying conspiracy.  Trial evidence revealed that at various times, 29 different entities joined the EMMC.  *See* Defense Exhibit 64 (Chart of EMMC membership and resignations) attached hereto as Addendum 2).  However, only 16 of these 29 EMMC members were included in Question 2 of the Verdict Form.  Thus, the jury could have easily found that there was an overarching conspiracy joined and participated in by one or more of the many EMMC members who were not listed in Question 2 of the Verdict Form.  Question 2 identified the following alleged participants:  (1) the EMMC, (2) three defendants alleged to be co-conspirators (C&C Carriage Mushroom Co., South Mill Mushroom Sales, Inc., and To-Jo Fresh Mushrooms, Inc.) and (3) twelve former EMMC member companies.  The jury determined that the EMMC participated in the conspiracy but the remaining defendants did not.  Thus, Winn-Dixie's

23

characterization of the jury's verdict is incorrect and misleading.  The jury did not find, as Winn-Dixie puts it, "that the EMMC had participated in the conspiracy but not a single EMMC member did . . . ."  Winn-Dixie's Opening Brief at p. 25.  The jury simply determined that, aside from the EMMC, no defendants identified within Question 2 participated in the conspiracy. A2500. The jury rendered no decision concerning the 17 EMMC members that were not identified on the Verdict Form.  Therefore, contrary to Winn-Dixie's contention, the jury did not find that no EMMC members participated in the conspiracy.  For this reason alone, Winn-Dixie's entire argument is unavailing.

Moreover, the verdict under review is supported by ample evidence.  *See supra* at p.13 n.3.  This evidence supports the jury's finding that none of the defendants identified on the Verdict Form participated in the conspiracy.  By way of example, testimony of Gary Schroeder underscores why the jury found that none of the listed defendants participated in the conspiracy.  Mr. Schroeder explained that while the EMMC members may have initially consented to a certain pricing rule during EMMC meetings, their consent fell apart by the time he left the meeting and got to his car.  As he stated, "people would literally call driving home from the meeting saying, wait a minute, I just realized that [the pricing] doesn't fit this scenario, or that scenario, whatever the case may be." A1221-1222.

24

Evidence also revealed that the EMMC may have conspired with witnesses who settled with Winn-Dixie prior to trial, such as Michael Cardile, or Robert Ferranto Sr., whose company, Bella Farms, was dismissed at the close of evidence at trial. Thus, the jury's response to Question 2 was entirely plausible and supported by the evidence.

Winn-Dixie also argues that the jury's answer to Question 4 (competitive harm) was against the manifest weight of the evidence. Winn-Dixie argues that, because the Defendants' expert conceded that the Defendants had various percentages of "market share" between 2001 and 2006, which was supported by other testimony and documentary evidence, the jury's response to Question 4 runs contra to the weight of such evidence. *See* Winn-Dixie's Opening Brief at pp 30-33.

Winn-Dixie's "weight of the evidence" argument fails because it is undeniable that the jury's response to Question 4 was supported by ample evidence and, thus, there is no basis for this Court to find that such response "shocks the conscience" or amounted to a "miscarriage of justice." In other words, if there is evidence supporting a jury's finding or verdict, there simply cannot be a miscarriage of justice that shocks the conscience of the trial judge.

Moreover, Winn-Dixie overemphasizes defendants' collective market share evidence and mischaracterizes other evidence as being "undisputed" or "unrefuted." This is simply wrong. The District Court recognized that despite Winn-Dixie's

25

labeling of such evidence as "undisputed," it "did not cut as clearly in its favor as [Winn-Dixie] would have the Court believe" because "Defendants presented a plausible version of events and introduced evidence to undermine Plaintiff's narrative, which the jury found credible." A9. The District Court noted further that the defendants' expert criticized Winn-Dixie's expert's analysis and that when "faced with the parties' competing narratives and dueling experts' mathematical analyses and conclusions, the jury may well have believed Defendants' explanations and evidence rather than [Winn-Dixie's]." A10. Winn-Dixie continues to ignore the plethora of evidence that revealed the Defendants lacked market power given their inability to raise prices for a sustained period of time, if ever. *See supra* at p.13 n.3. Indeed, the District Court found that "[Winn-Dixie's] arguments do not rise beyond merely wishing that the jury believed its side rather than Defendants'." A10.

At trial, Defendants' expert commented on the market share issue and explained that shortly after the organization was formed, members began to resign. A1954-1955. Then, year after year, more members resigned. Thus, while Defendants' expert did acknowledge that Defendants' market share was approximately 90% in 2001 (A1955), he explained that their market steadily declined as the group's size shrank over the next five years. By 2005, the EMMC's market share was approximately 58% and by 2010, the Defendants' market share was under 20%. *Id*.

26

Defendants' expert also explained that even where a group controls has significant market share, that fact alone cannot demonstrate market power because, "even a 100 percent market share might not be enough" to impact the market if the group is not following "whatever rules the group has to manage prices." (A1957). Here, trial evidence revealed this was the case. Defendants lacked the ability to uniformly or routinely follow the "rules" for various reasons. *See supra* at p.13 n.3.

Testimony from multiple defendant company representatives established the "rules" were, or could not be, followed because: (1) competition from non-EMMC members, from within and outside the U.S., prevented the Defendants from controlling the market; (2) retail sellers' buying power prevented Defendants from marketing product in accordance with minimum pricing; (3) mushroom perishability afforded retail sellers vast buying power; (4) there was strong competition between and among EMMC members and former EMMC members; (5) retail sellers implemented buying procedures (auctions and reverse auctions) that prevented adherence to minimum pricing; and (6) there were multiple exceptions to minimum pricing rendering it ineffective. *See supra* at p.13 n.3.

Moreover, empirical evidence established that when the minimum pricing policy was in place, actual mushroom prices, as well as prices adjusted for inflation trended down (*see* A1947-48, A1953) while at the same time, input costs (measured by inflation) continued to rise. *See* A1935-36. Further, Winn-Dixie's expert

27

conceded that the purported Supply Control Plan (the other element of the alleged single overarching conspiracy) had no effect on prices.  A1598-99.  The downward trend of prices alone supports the jury's finding in its answer to Question 4 and when coupled with the trial evidence described above, establishes that regardless of the EMMC's market share, Defendants lacked the ability to successfully raise prices above a supra-competitive level for a sustained time-period.  The converse of this is the very definition of market power as the District Court properly instructed the jury.  *See A2459-61*.  In view of the foregoing evidence, the jury was justified in finding that Winn-Dixie failed to meet it burden of establishing anticompetitive effects in the relevant market.

### (C)  Winn-Dixie's Inconsistency Argument as to Question 2 Was Not Preserved because Winn-Dixie Did Not Raise this Argument before the Jury Was Discharged.

Winn-Dixie failed to raise an inconsistency objection to the jury's finding on Question 2, membership participation (A2500), before the District Court discharged the jury.  A2481-83.  In doing so, it forfeited its ability to raise this argument now.  *See Frank C. Pollara Group, LLC,* 784 F.3d at 191.  In *Pollara* the defendant raised the same argument that Winn-Dixie now advocates.  There, the jury was asked to decide the degree of fault for multiple defendants.  The appellant argued that the jury's verdict was inconsistent because its finding with respect to one of the defendants precluded a particular finding against another defendant.  *See id.* at 189.

28

By assigning different degrees of fault to different defendants, the appellant claimed "the verdict was irreparably inconsistent." *Id*. at 190.  This Court refused to consider this argument because, in this Circuit, where "a party fails to object to an inconsistency in a general verdict before the jury is excused, that party waives any objection in that regard." *Id*. at 191.

The holding announced in *Pollara* is directly on point here and precludes further review of Winn Dixie's substantive argument.  The Winn-Dixie jury, after receiving the District Court's legal instructions, rendered a general verdict that addressed, *inter alia*, whether any of the Defendants that remained in the case participated in the conspiracy that it previously found to exist. [6]  *See* Verdict Form A2499 (finding the existence of a conspiracy) and Verdict Form A2500 (findings as to participation in the conspiracy).  When the jury returned its verdict, there were 16 defendants against whom the potential for liability existed.  As previously discussed, the liability of twenty other defendants was not at issue in this case, Winn-Dixie

---

[6]  *See Pollara Group,* 784 F.3d at 190 (explaining the difference between a General Verdict with answers to written questions pursuant to Fed. R. Civ. P. 49(b) and a Special Verdict pursuant to Rule 49(a)).  Apparently, there was some confusion regarding this issue.  The court originally entered judgment on March 23, 2022 (A7) based on each written question of the Verdict Form, but then entered an amended judgment on June 13, 2022 (A11) after Winn-Dixie did not object to Defendants' Motion to Alter or Amend Judgment to reflect a general verdict.  Dkt. No. 498.  Winn-Dixie's lack of objection to this motion indicates that it consented to the entry of a General Verdict. *See also supra* at p. 16 n .4

29

asserts that in finding the EMMC participated in the conspiracy, while contemporaneously finding none of the other listed defendants did, the jury's verdict is inconsistent.  However, Winn-Dixie failed to raise this purported inconsistency before the jury was discharged.    A2481-83. This failure results in a waiver precluding this Court from considering the matter further. *See Pollara Group,* 784 F.3d at 191.

**(D)  Even if Winn-Dixie's Inconsistency Argument as to Question 2 was properly Preserved for Appellate Review, the Jury's Answers to Question 2 were Internally Consistent and Consistent with the Jury's Finding that there was an Overarching Conspiracy.**

As detailed above, *see supra* at Section I(B),  Winn-Dixie's contention that the jury's answers to Question 2 is fundamentally flawed.  Contrary to Winn-Dixie's argument that the jury found that no EMMC members participated in the conspiracy, it is obvious that the answers to Question 2 only related to the 16 remaining defendants while there were many EMMC members (*see* Addendum 2) that did not properly appear on the Question 2 of Verdict Form.

Moreover, Winn-Dixie's position that such answers were inconsistent misses the mark.  In support of its argument, Winn-Dixie directs this Court to a portion of the charge dealing with a trade association's potential liability (*see* Winn-Dixie's Opening Brief at p. 24).  However, Winn-Dixie neglected to inform this Court about the District Court's charge that pertains to a member of a trade association's potential liability.  That section reads:

30

A business that belongs to a trade association does not become liable for violating the antitrust laws simply because the trade association is liable for such violation. Instead, plaintiff must prove that the member of the trade association knew of and participated in the conduct you find unlawful. Identification of a particular Defendant's membership or role in the organization is not sufficient to show that a particular Defendant agreed to the conspiracy itself.

The Plaintiff contends that all Defendants engaged in similar conduct, namely setting prices in accordance with prices set forth in a series of price lists. The Plaintiff further contends that this conduct, when considered with other evidence, shows that a conspiracy existed among all Defendants.

\*          \*          \*

However, if you find that Plaintiff has failed to satisfy its burden of proof as to each Defendant, that the Defendant participated in the conspiracy, you must return a verdict for that Defendant.

A2464-66. Winn-Dixie did not object to this instruction and thus, conceded the District Court's full instruction was proper. The jury concluded that while the EMMC participated in the conspiracy, no other named defendants did. Verdict Form -A2500. As charged, the jury rendered a rational verdict since the law permits finding a trade association liable for conspiracy while, at the same time, finding that none of the defendants listed in Question 2 of the Verdict Form participated in the alleged conspiracy.

**(E) Winn-Dixie failed to Preserve its Argument that the Jury did not follow the District Court's Instructions pertaining to Questions 2 and 4 because it did not file a Motion under Fed. R. Civ. P. 50(a), nor did it raise this Argument before the Jury was discharged.**

Winn-Dixie's contention that the jury failed to follow the District Court's instructions on participation and anticompetitive effects is actually a disguised attack on the sufficiency of the evidence that underlies the jury's answers to Questions 2 and 4. As explained above, where a party fails to move under Rule 50(a), it waives the right to claim entitlement to a new trial based on any attack to the sufficiency of the the evidence at trial. *See supra* Section 1(A).

Here, Winn-Dixie essentially argues that because there was "overwhelming" evidence to establish both participation and anticompetitive effects, the jury did not follow the District Court's instructions as to these elements of its Sherman Act claim. This position, while factually incorrect (*see supra* at p13. n.3), cannot now be advanced because Winn-Dixie did not timely request judgment to be entered in its favor under Rule 50(a). The basis that Winn-Dixie advances to argue that the jury failed to follow the instructions at issue has been waived. *See supra* at Section 1(A).

Winn-Dixie also argues that because the jury's answers to Question 2 were "inconsistent," the jury failed to follow the District Court's instructions as to participation. Again, Winn-Dixie's sole basis for this argument is that the evidence as to participation, which it characterizes to be "overwhelming," ostensibly fits within the *Greenleaf* exception to the *Yohannon* rule as discussed above. However,

32

as also discussed above and essentially found by the District Court, there was sufficient evidence to support the jury's finding in response to Question 2.  Thus, under this Court's decision in *Yohannon,* Winn-Dixie failed to preserve this argument.  *See supra* at Section 1(A) Additionally, this argument is waived under the Court rationale in *Pollara* requiring an appellant to raise an inconsistency in a jury verdict before the jury is discharged. See supra at Section 1(C).

### (F)  Even if Winn-Dixie Preserved this Argument there is No Evidence Supporting Winn Dixie's Claim that the Jury did not Follow the District Court's Instructions pertaining to Questions 2 and 4.

As explained above, the foundation upon which Winn-Dixie asserts that the Jury failed to follow the District Court's instruction as to participation (Question 2) is fundamentally flawed.  *See supra*. at Section 1(B).  Moreover, as detailed above, the District Court charged the jury as to the burden of proof Winn-Dixie needed to establish in order for the jury to find any individual EMMC member(s) participated in the Sherman Act conspiracy.  *See supra*. at Section 1(D).   The evidence developed at trial, when evaluated under this standard, supported the jury's ultimate findings that none of the remaining defendants, aside from the EMMC, participated in the Sherman Act conspiracy.

Winn-Dixie also asserts that the jury failed to follow the District Court's instruction on competitive harm because the Defendants' market share alone, compelled the jury conclude the defendants had market power. In essence,

Case: 22-2289     Document: 30     Page: 42     Date Filed: 12/07/2022

Winn-Dixie argues that because Defendants collectively held a substantial yet declining market share for some period of time, the jury was obligated or required to find the rule of reason's "anticompetitive prong" was met. However, the jury charge (as agreed to by Winn-Dixie at A2247) on competitive harm contained no such directive. A2459-61. Rather, the charge actually informed the jury that it need not find market power simply because the Defendants controlled a substantial share of the market. *Id*.

Defendants do not dispute that, in this Circuit, a plaintiff may satisfy the rule of reason's "anticompetitive effects" prong by proving the conduct under review caused actual detrimental effects such as reduced output or increased prices. These detrimental effects are known as "actual effects" or "market effects." Defendants also acknowledge that where proofs of "actual effects" or "market effects" cannot be made, a plaintiff may submit "proofs of the defendant's 'market power'" to serve as a "'surrogate for detrimental effects.'" *U.S. v. Brown Univ.*, 5 F.3d 658, 669-70 (3d Cir. 1993) (citations and quotation omitted). The fact that Defendants concede these points does nothing to save Winn-Dixie's appeal because the evidence Winn-Dixie offered during trial fell well short of establishing: (1) actual anticompetitive effects or (2) Defendants' market power.

Market power, as the District Court instructed the jury without objection (A2459-61), means having "an ability to profitably raise prices, *for a sustained*

34

*period of time*, above those that would be charged in a competitive market." A2459-61 (emphasis added). As the Eleventh Circuit noted in *Graphic Products. Distributors. v. Intek Corp.*, 717 F.2d 1560, 1570 (11th Cir. 1983), a case Winn-Dixie relies upon, "[m]arket power is the ability to raise price significantly above the competitive level *without losing all of one's business*." (emphasis added).

Multiple factors, including a party's market share, need to be analyzed when determining whether that party has market power. The District Court instructed the jury that "market share" is an "important factor" to consider when determining if "market power" exists. A2459-61. That factor alone, however, does not dispose of the market power issue. Indeed, the District Court charged further, "[i]f Defendants do not possess a substantial market share, it is less likely that Defendants possess market power." *Id*. This implies that where a defendant does control a substantial market share, it is more likely that such defendant possesses market power. The use of the word "likely," however, informs the jury that it may find market power lacking even where a defendant controls a substantial share of the market. If controlling a substantial market share alone resolved the market power issue, surely the District Court would not give this portion of the instruction. Winn-Dixie failed to object to this instruction and, therefore, conceded that the charge accurately reflects the law on competitive harm.

The case law Winn-Dixie cites does not support the contention that a new trial is warranted.  In *Gordon v. Lewiston Hospital*, 423 F.3d 184, 212-13 (3d Cir. 2005), following a bench trial, the District Court determined that the defendant lacked market power because its market share was simply too low.  On appeal, the Third Circuit applied the clearly erroneous standard and simply found defendant's "market share [was] insufficient to prove market power."  *Id*.  *Gordon* in no way sets forth a bright line above which a certain market share may evidence market power.

The District Court of New Jersey's unreported opinion in *Debjo Sales, Inc. v. Houghton Mifflin Harcourt Publishing Co.*, 2015 WL 1969380 (D.N.J. 2015) similarly does not aid Winn-Dixie's argument.  That decision involved whether the plaintiff's amended complaint alleged viable causes of action premised on alleged Sherman Act violations.  The District Court ultimately held it did not.  *See id*. at *9.  Before reaching that decision, the District Court noted "[b]ecause the effect of market share on market power varies from industry to industry, [the court] cannot conclude at this stage that 38% market share is insufficient to plead market power."  *Id*. at 5. The *Debjo* case, at best, stands for the proposition that where a complaint avers a defendant controls 38% market share, it adequately pleads the existence of market power.  It in no way mandates that a jury be compelled to find the existence of that defendant's market power based on any market share percentage.  Indeed, as

36

the *Debjo* court recognized, the effect a party's market share has on market power varies from industry to industry. *Id*.

In the instant case, the jury concluded that Winn-Dixie did not satisfy the "anticompetitive prong." It is entirely plausible that the jury determined the Defendants did not have sufficient market power, as defined by the District Court, irrespective of their market share percentages. This is true because to find the existence of market power, the jury was required to find that the Defendants had the "ability to profitably raises prices, for a sustained period of time," above competitive levels. There was ample record evidence establishing this not to be the case. *See supra* at p.13 n.3. Thus, the relevant inquiry is not the Defendants' market share percentages as Winn-Dixie posits. Rather, the relevant inquiry is whether the defendants had the ability to charge supra-competitive prices for a "sustained period of time." Here, the evidence clearly showed that defendants were not able to achieve a sustained price increase. *See supra* at pp. 26-28 (summarizing expert testimony discussing defendants lack of market power), *see also supra* at p.13 n.3. Indeed, as noted by the District Court "[F]aced with the parties' competing narratives and dueling experts' mathematical analyses and conclusions, the jury may well have believed Defendants' explanations and evidence rather than Plaintiff's." A9-10.

Winn-Dixie also relies on four out-of-circuit decisions (*Reazin v. Blue Cross & Blue Shield*, 899 F.2d 951 (10th Cir. 1990), *Wilk v. Am. Med. Ass'n*,

37

895 F.2d 352 (7th Cir. 1990), *Graphics Prods. Distribs. V. Itek Corp.*, 717 F.2d 1560 (11th Cir. 1983), and *Barrett v. Fields*, 924 F. Supp. 1063 (D. Kan. 1996)) in support of its market share argument. *See* App. Br. 15, 29-30. These cases actually make clear that market share alone does not establish market power.

In *Reazin*, the Tenth Circuit specifically noted, "[m]arket share is relevant to the determination of the existence of market or monopoly power, but 'market share alone is insufficient to establish market power'" having recognized that "[i]t may or may not reflect *actual* power to control price or exclude competition." *Reazin*, 899 F.2d at 967 (quotation and citations omitted) (emphasis in original).

In both *Wilk* and *Graphic Products Distributors,* market power was found to exist, given the defendants' market share percentages as well as other factors. *See Wilk*, 895 F.2d at 360 (identifying "several facts" that demonstrated the defendant's market power), *see also Graphics Prods. Distribs.*, 717 F.2d at 1570 (noting evidence of defendant's market share and evidence of product differentiation supported finding of market power). Hence, in neither *Reazin*, *Wilks*, nor *Graphic Products Distributors* was market power established through market share alone.

Finally, the District Court of Kansas' decision in *Barrett* bears no significance to Winn-Dixie's appeal. There, the District Court merely held that the trial evidence supported the jury's finding of market power. *Barrett*, 924 F.Supp. at 1075. However, the jury's finding of market power in *Barrett* does not somehow reveal

38

juror confusion in the present matter.  Here, the jury was properly instructed on the elements of market power, and, hearing no objection from Winn-Dixie, proceeded to deliberate and, in doing so, was required to consider whether Defendants had the ability to charge supra-competitive prices for a "sustained period of time."  Ample evidence adduced at trial supported the finding that Winn-Dixie failed to establish "actual effects" and "market power."  *See supra*. at Section 1(B).  Since Winn-Dixie could not make either of these showings, the jury correctly determined that the alleged conduct was not anticompetitive.

Thus, Winn-Dixie's arguments that the jury somehow failed to follow the instructions pertaining to Questions 2 and 4 is unavailing, as the District Court noted in its opinion denying Winn-Dixie's Rule 59 motion on the grounds that the jury failed to follow the instructions pertaining to these questions.  A9-10.

## II.  WINN-DIXIE WAIVED OR DID NOT PRESERVE ITS CHALLENGE TO THE DISTRICT COURT PRE-TRIAL RULING ON THE APPLICATION OF THE QUICK LOOK RULE OF REASON ANALYSIS AND IN ANY EVENT, THE DISTRICT COURT CORRECTLY DENIED WINN-DIXIE'S MOTION.

### (A) Winn-Dixie did not Preserve its Argument on the Application of the Quick Look Mode of Antitrust Analysis for Appellate Review and Winn-Dixie Effectively Abandoned its Quick Look Argument by not timely Objecting to the Traditional Rule of Reason Instruction Given by the Court.

The District Court instructed the jury under the traditional, full blown, rule of reason analysis regarding the overarching conspiracy A2459-61.  The court also

39

designed a Verdict Form including Question 4 asking the jury whether Winn-Dixie met its burden of proof regarding the anticompetitive effects of the overarching conspiracy.  Significantly, Winn-Dixie did not request a jury instruction tailored to the Quick Look mode of analysis.  *See* Jury instructions submitted by Winn-Dixie at Dkt. No. 438.  Nor did it object to the jury instruction given by the Court.  Nor did Winn-Dixie object to the Verdict Form insofar as it included Question 4. A2298.  Moreover, Winn-Dixie did not make a motion for a directed verdict under Rule 50(a) essentially renewing its pre-trial arguments as to the application of the Quick Look mode of analysis.  Under these circumstances, Winn-Dixie waived or failed to preserve this issue for appellate review.  Moreover, it appears that that Winn-Dixie effectively abandoned its arguments as to the application of the Quick Look mode of analysis by failing to properly object or assign error to the court's jury instructions.

Winn-Dixie's ability to appeal from the District Court's pre-trial ruling is stymied by this court's holding in *Pollara Group,* 784 F.3d  at 177*,* following the Supreme Court's holding in *Ortiz v. Jordan* requiring that a party must preserve its argument on a pre-trial ruling involving mixed questions of law and fact by including this argument in a rule 50(a) motion before the jury is instructed.  However, Winn-Dixie did not make such a motion.  The *Pollara* court held that:

"In light of *Ortiz*, it is clear that if an earlier dispositive argument is not renewed through motions for judgement as a matter of law under Rule 50(a) and Rule 50(b) the litigant propounding the argument may not seek appellate review of a decision rejecting it unless that argument presents a pure question of law that can be decided with reference only to undisputed facts." *Id.* at 187.

The *Pollara* Court went on to explain that:

"While we are mindful that 'it would be unfair to require a litigant to jump up and down or to labor an objection' that is already part of the record, it is not unfair to make a litigant deal with the full record. Again, "once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion. Insofar as an issue has a factual component, the failure to raise the issue in motions for judgment as a matter of law at and after trial makes it inappropriate for an appellate court to address, what should have been addressed to the judge who saw and heard the witnesses and had the feel for the case which no appellate printed transcript can impart." *Id.*

Here, it is clear the District Court's ruling had factual components. It is equally clear that Winn-Dixie did not raise this issue in the District Court by including it in a Rule 50(a) motion—or including it its Rule 50(b) motion—or in its motion for a new trial under Rule 59.   Thus, we submit that Winn-Dixie did not properly preserve this issue for appellate review.

Further, Winn-Dixie abandoned its Quick Look argument since it did not request a jury instruction under the Quick Look mode of analysis and did not object to the trial court's instruction under the traditional rule of reason mode of analysis. Rule 51(c) requires a party to timely object to a jury instruction.  Here, Winn-Dixie did not do so either before or after the traditional rule of reason instruction was given.

41

Rule 51(d) (2) provides that a court may consider a plain error in jury instructions in the absence of an objection to the instruction if the error affects substantial rights. However, it cannot be said that the full rule of reason instruction given by the court was clearly erroneous or was not supported by substantial evidence. Thus, the instruction did not lead to a manifest injustice.

### (B)  The District Court's Pre-Trial Ruling Deciding a Mixed Question of Law and Fact was Correct.

Winn-Dixie appeals from a pre-trial order entered by the District Court shortly before trial denying its motion to apply the Quick Look rule of reason analysis to the EMMC minimum pricing policy.   The court noted that the Quick Look mode of antitrust analysis is "'an abbreviated…analysis under the rule of reason' that can be applied when 'an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an obvious anticompetitive effect on customers and markets.'" A17 *citing Cal. Dental Ass'n.* v. FTC, 526 U.S. 756, 770 (1999).[7]   If the Quick Look mode of analysis was applied

---

[7]  *See also Deutscher Tennis Bund v. ATP Tour, Inc.,* 610 F 3d 820 (3d Cir. 2010). Under the traditional or full blown rule of reason analysis "'the plaintiff has the initial burden under the rule of reason of showing that the alleged combination or agreement produced adverse, anticompetitive effects within the relevant product and geographic markets…[i]f a plaintiff meets his initial burden…the burden shifts to defendant to show that the challenged conduct promotes a sufficiently pro-competitive objective.  To rebut, the Plaintiff must demonstrate that the restraint is not reasonably necessary to achieve the stated objective.'" *quoting Brown Univ.,* 5 F.3d at 669).

by the District Court it would have relieved Winn-Dixie of its initial burden to show that the overarching conspiracy in this case produced adverse economic effects within the relevant product and geographic markets.[8]

In its Order of February 10, 2022, the District Court correctly determined that the Quick Look mode of rule of reason analysis did not apply to the then apparent facts of this case.  A16-17.  The court essentially found that the Quick Look mode of analysis is inappropriate in this case because the "effects of the minimum pricing policy are not 'obviously or facially anticompetitive,'" *citing*, *Food Lion, LLC v. Dean Foods Co.* 2016 WL 1259959 at *4 (E.D. Tenn. Mar. 30, 2016).  The District Court also noted that the EMMC provided empirical analysis by an expert witness [Dr. David] "that the supply of mushrooms may have increased and the price of mushrooms may have decreased as a result of the minimum pricing policy." A17.  The court also referred to a ruling in—*In re Processed Eggs Antitrust Litig.*, 206 F. Supp. 3d. 1043, 1047 (E.D. Pa. 2016), holding that the Quick Look mode of analysis, "is not appropriate where [as here] 'empirical analysis is required to determine [the]

---

[8]  As asserted by Winn-Dixie, the overarching conspiracy included both the EMMC minimum pricing policy and the so called supply control program (*See* A2499 (Verdict Form, Question 1), Winn-Dixie's expert witness conceded at trial, however, that the supply control program did not have any anticompetitive effects in the relevant markets.  A1598-99.  Moreover, Winn-Dixie did not object to the District Court's jury instruction that the entire overarching conspiracy should be decided under the rule of reason.  A2247, A2459-61.

challenged restraint's net competitive effect.'" Finally, the court noted that the alleged conspiracy involved "a complex relationship among numerous parties with varying market roles." (*citing Food Lion* at *4, *on remand from In re Se, Milk Antitrust Litig.,* 739 F. 3d 262, 275-76 (6th Cir. 2014). Thus, the district court's pretrial ruling—involving mixed questions of law and fact—was correct when it was made.

### III. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN ADMITTING EVIDENCE RELEVANT TO THE DEFENDANTS' SIZE, PROFITABILITY AND FINANCIAL CONDITION FOR PURPOSES OTHER THAN ARGUING PROCOMPETITIVE BENEFITS AND COUNSEL DID NOT ENGAGE IN ANY MISCONDUCT IN ELICITING THIS EVIDENCE NOR WAS THE EVIDENCE REASONABLY LIKELY TO INFLUENCE A FINDING THAT THE JURY DID NOT HAVE TO MAKE.

Winn-Dixie claims that it is entitled to a new trial because the EMMC Defendants and their counsel made "repeated references to the purpose of the EMMC and its minimum pricing as saving farms and decreasing losses" which contravened the District Court's *in limine* ruling excluding arguments that "'increased producer prices, increased producer profits, decreased producer losses, or helping firms stay in operation are valid pro-competitive benefits under the rule of reason'" at trial. *See* Winn Dixie's Opening Brief at p. 43. Winn-Dixie further claims that the introduction of "the improper statements confused the jury and lead to the inconsistent verdict."

44

Winn Dixie's Opening Brief at p. 47. Both claims fail for the reasons discussed below.

Winn-Dixie's two-pronged argument has no merit. First, with respect to the motion *in limine,* Winn-Dixie relies upon the District Court's Order that the EMMC could not ***argue*** that certain factors were valid pro-competitive benefits under the rule of reason and not that all such evidence was precluded from trial for any purpose. A16. Second, any references to the above language set forth in the District Court's Order made by the EMMC Defendants or their counsel was not made for the purpose of establishing valid pro-competitive benefits under the rule of reason at trial. Thus, it did not violate the Order. Trial testimony and argument relating to the EMMC Defendants' profits, losses and inability to stay in operation were made for other purposes, including why certain EMMC Defendants decided to join the organization and showing that the EMMC Minimum Pricing Policy, which was the cornerstone of Winn-Dixie's case at trial, simply did not work. This evidence was expressly permitted based on the District Court's Order on a motion *in limine* that Winn-Dixie curiously omitted from its Brief. A18 at ¶10.

Moreover, the District Court gave a clear jury instruction regarding procompetitive benefits. A 2461-62. Winn-Dixie also fails to mention that the jury did not even reach Question 5 on the Verdict Form that would have required the jury

45

to consider whether the overarching conspiracy included any pro-competitive benefits.  Verdict Form.  *See* Verdict Form, at Question 5.  A2503.

This Circuit reviews requests for a new trial based on attorney misconduct for abuse of discretion.  *Greenleaf*, 174 F.3d at 363 *citing*, *Blanche Road Corp. v. Bensalem Township,* 57 F.3d 253, 264 (3d Cir.1995); *Fineman v. Armstrong World Indus. Inc.,* 980 F.2d 171, 207 (3d Cir.1992).  "This is because we recognize that "[i]n matters of trial procedure . . . the trial judge is entrusted with wide discretion because he [or she] is in a far better position than we to appraise the effect of the improper argument of counsel." *Id.* (citations omitted).   A new trial may be granted only where the improper statements "made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Id.* at **363-64, *citing*, *Draper v. Airco Inc.,* 580 F.2d 91, 94 (3d Cir. 1978).

In an attempt to shoehorn the foregoing facts into a claim of attorney misconduct, Winn-Dixie improperly twists the language in the District Court's Order regarding one motion *in limine* and fails to even acknowledge the language in a second Order regarding a different motion *in limine.*  The District Court issued these two Orders on the same day.  The Order that Winn-Dixie relies upon is based on a motion the Court granted "for substantially the same reasons" as was set forth in an Order on a motion *in limine* in an earlier opt out case against the EMMC

46

Defendants. A16.  In its Brief, Winn-Dixie cites to the language of the Order that

states, in pertinent part:

> "[T]he Sherman Act does not permit defendants to justify
> anticompetitive behavior by arguing that the behavior forestalls
> certain negative consequences where those consequences are the
> result of competition . . . .the EMMC will **not be permitted to
> argue** that increased producer prices, increased producer profits,
> decreased producer losses, or helping firms stay in operation are
> valid pro-competitive benefits under the rule of reason.
> (emphasis added).

The District Court ordered that counsel for the EMMC Defendants could not

argue that the above factors were pro-competitive benefits in support of a defense at

trial.  Defense counsel never made this argument at trial.  Rather than acknowledge

this fact, Winn-Dixie attempts to manipulate the language of the Order, as well as

the trial transcript, to claim that the Order was somehow violated.

Winn-Dixie does not inform this Court that the District Court entered another

Order on a motion *in limine* that must be considered in the pro-competitive benefits

context.  The District Court entered the following Order:

> Winn-Dixie's Motion In Limine to Preclude Evidence and
> Arguments of General Financial Condition (Dkt. 384) is
> **GRANTED in part and DENIED in part.**  The Court agrees
> with the parties that evidence of the parties' sizes, profitability,
> and financial conditions is not admissible for the purpose of
> showing whether Winn-Dixie should or should not receive a
> judgment in its favor. (*See* Dkt. 384 at 4; Dkt. 389 at 1.) Such
> Evidence is irrelevant and could be highly prejudicial. *See* Fed.
> R. Evid. 401-03. Accordingly, the Motion is granted with respect
> to that purpose. **Subject to objections at trial, the Court will
> allow the parties to introduce arguments and evidence**

47

**related to the parties' size, profitability, and financial conditions for other proper purposes.** (Emphasis added). A18

Winn Dixie cites to only one instance of witness testimony which it complains violated the District Court's Order regarding pro-competitive benefits. On Day 2 of the trial, counsel for Winn-Dixie called John Pia, owner and President of one of the EMMC Defendants, as a witness in its case and questioned him about an email Mr. Pia had written when he was President of the EMMC. In response, Mr. Pia offered reasoning as to why the EMMC was formed. A302-03. Mr. Pia's statements did not relate to any purported pro-competitive benefits concerning the challenged restraints and thus, in no way relate to (or violate) the District Court's prior ruling. Days later, Winn-Dixie's counsel lodged a general complaint during a sidebar conference relating to witness testimony elicited during its case-in-chief. According to Winn-Dixie, witnesses were offering "out of bounds" testimony. Specifically, it argued that witnesses are precluded from testifying about the general financial condition of their respective companies based on the District Court's *in limine* ruling that precluded argument concerning certain purported pro-competitive benefits. The District Court rejected the argument stating the challenged testimony was "not out of bounds." A1013-14.

It was clear that, in the Court's view, Winn-Dixie counsel did not remember the Court's other *in limine* ruling quoted above that allowed evidence relating to the defendants' size, profitability and financial condition for other proper purposes.

48

Moreover, *immediately after* the recess following the sidebar conference, the District Court further clarified the basis for it admission of evidence relevant to issues other than pro-competitive benefits.

> "With respect to the procompetitive benefits, the motion in limine ruling held that the EMMC was not permitted: 'To argue that increased producer prices increased producer profits, decreased producer losses, or helping firms stay in business are valid procompetitive benefits,' with respect to the minimum pricing policies under the rule of reason. The testimony we've heard so far referencing why firms joined the EMMC **has no bearing on the procompetitive benefits step** of the rule of reason analysis for minimum pricing." A1016 (emphasis added)

Winn-Dixie further claims that the EMMC Defendants and defense counsel not only ran afoul of the Court's motion *in limine* Order but that it is "reasonably probable" that the admission of procompetitive benefits testimony or argument lead to jury confusion and an inconsistent verdict. Winn-Dixie does not articulate what specific testimony or argument allegedly resulted in jury confusion. Winn-Dixie's Opening Brief at p.47. Likewise, Winn-Dixie fails to explain how such evidence or argument could have possibly resulted in an inconsistent verdict, especially because the jury never reached the pro-competitive issue. A2503. For this reason, Winn-Dixie's jury confusion and inconsistent verdict argument should be rejected out of hand.

Moreover, the District Court instructed the jury on what did and did not constitute a procompetitive benefit. Prior to the jury charge, and as Winn-Dixie

points out in its Brief, there was a lengthy discussion engaged in by the Court and counsel for all parties regarding whether a procompetitive jury charge should be given and, if so, what language should be included in same.  A2248-2258.  The jury, quite obviously, was not privy to counsel's argument regarding this instruction and had only the actual jury instruction from the Court to rely on with respect to procompetitive benefits.  The District Court instructed the jury that:

> If you find that Plaintiff has proven the challenged restraints resulted in substantial harm to competition in a relevant market, you must determine whether the restraint also benefits competition in other ways.  The Defendants bear the burden of showing procompetitive benefits.  In considering whether the challenged restraint benefitted competition, you may consider various factors, including but not limited to increase production, increased consumer choice, increased service, decreased prices, or improved product quality.  **You may not consider increased producer prices, increase[d] producer profits, decreased producer losses, or helping firms stay in operation as procompetitive benefits.**  (emphasis added). A2461-62.

The District Court specifically instructed the jury that it could not consider the fact that EMMC Defendants were struggling financially or going out of business as a procompetitive benefit.  Therefore, any confusion Winn-Dixie claims occurred during trial, which defendants dispute, was cured by the District Court's jury charge. Winn-Dixie did not object to this charge as being insufficient in any way during the charge conference or after it was read to the jury.  This Court should thus reject Winn-Dixie's unsupported claim.

Finally, Winn-Dixie's reliance on *Waddington North American, Inc. v. Sabert Corporation*, 2011 U.S. Dist. LEXIS 86632 (D.N.J. Aug. 5, 2011) is misplaced. The Court ordered a new trial because of the egregious misconduct of defense counsel at trial. With respect to attorney misconduct at trial, *Waddington* is a true outlier case and inapposite to the facts present here. That Court cited a list of counsel misconduct which included: introducing favorable foreign patent proceedings which the Court had excluded pretrial and sustained objections as to its introduction at trial; making arguments relating to a claim that had been dismissed pretrial and declared by the Court as irrelevant at trial; making "without batting an eyelash" a noninfringement argument the Court had rejected and ordered improper to the jury; using an improper and prejudicial visual aid during closing argument; and continuously disregarding the Court's instructions regarding leading questions, undermined the jury's role in determining the credibility of witnesses, repeatedly asked leading questions of friendly witnesses and continuously made misstatements of patent law. **6-19. The Court observed that:

> The violations were egregious and they were made far worse by the fact that in committing these violations [counsel] repeatedly ignored the Court's rulings. The Court has seldom had an attorney before it who had as much difficulty in following the Court's orders and rulings. A trial is not the Old West. There are rules, and attorneys are expected to follow them.
>
> The Court cannot reward a litigant who manifestly disregards those rules and express rulings of the Court based on either the

> effectiveness of opposing counsel or the proper instructions of this Court. *6.

Counsel in the *Waddington* case willfully and egregiously disobeyed the Court's orders made prior to and at trial. The Court ordered a new trial because "[t]o hold otherwise would encourage the use of deliberately crafted misconduct and improper litigation tactics to influence a jury's verdict." *20. Defense counsel in this case did not engage in any such conduct.

On the basis of the foregoing facts, it is clear that the District Court did not abuse its discretion in making the evidentiary rulings at issue. Thus, there could not have been misconduct by defense counsel in eliciting this evidence for a purpose other than arguing pro-competitive benefits. Moreover, it cannot be said that this evidence was reasonably probable to have influenced the jury's verdict since the District Court instructed the jury that the specific circumstances identified in its pre trial order were not pro-competitive benefits. Finally, it was not necessary for the jury to consider pro-competitive benefits resulting from the overarching conspiracy (Question 5 on the Verdict Form) because in its answer to Question 4, it found that Winn-Dixie did not meet its initial burden of showing that the overarching conspiracy had anticompetitive effects in the relevant product and geographic markets.

## CONCLUSION

For the foregoing reasons, the Amended Judgment entered by the District Court on June 13, 2022 should be affirmed.


Respectfully Submitted


/s/  William A. DeStefano
William A. DeStefano
Terri A. Pawelski
Matthew C. Brunelli
Stevens & Lee, P.C.
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102

*Counsel for Conditional Cross Appellants Eastern Mushroom Marketing Cooperative Brownstone Mushroom Farms, Inc,. To-Jo Fresh Mushrooms, Inc., Country Fresh Mushrooms Co., Gino Gaspari & Sons, Inc., Giorgi Mushroom Company, Kaolin Mushroom Farms, Inc., South Mill Mushroom Sales, Inc., Louis M. Marson Jr. Inc., Modern Mushroom Farms, Inc, Oakshire Mushroom Farm, Inc., C&C Carriage, Inc.  Phillips Mushroom Farms, Inc., and Monterey Mushroom Farms, Inc.*

## CERTIFICATE OF ADMISSION

We hereby certify that we are members in good standing of the Bar of the

United States Court of Appeals for the Third Circuit.


Dated:  December 7, 2022

*/s/ William A. DeStefano*
William A. DeStefano


*/s/ Terri A. Pawelski*
Terri A. Pawelski

## CERTIFICATE OF COMPLIANCE

I hereby certify that Appellee's Brief complies with the type and volume limitations of Fed. R. App. P. 32 as this Brief contains 12,615 words excluding parts of the Brief excluded by the aforesaid Rule of Appellate Procedure This Brief further complies with the aforesaid Rules as it contains proportional 14-point Times New Roman typeface using Microsoft Office 365 Version 2209.

Appellees' Brief complies with the electronic filing requirements of this Court because electronically file copy of same is identical to the paper copies and no viruses have been detected in the electronically filed version of the Brief using SentinelOne Agent, Version 22.1.5.11025.

Dated:  December 7, 2022

*/s/ William A. DeStefano*
William A. DeStefano

SL1 1815129v2 107141.00002

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this seventh day of December, 2022 the foregoing Appellees' Brief was filed and served upon counsel for all parties to this Appeal through the Court's ECF system.

Dated:  December 7, 2022

*/s/ William A. DeStefano*
William A. DeStefano

# ADDENDUM 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WINN DIXIE STORES, INC. et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **EASTERN MUSHROOM MARKETING** | : | **No. 15-cv-6480** |
| **COOPERATIVE, INC.** | : | |

# VERDICT FORM

A2498

**VERDICT FORM**

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*, No. 15-cv-6480

*Your answer to each question must be unanimous.*

1. **Do you find, by a preponderance of the evidence, that there was a single overarching conspiracy to raise the prices of agaricus mushrooms by: (1) circulating minimum or target price lists along with rules and regulations requiring EMMC members to charge those prices; and (2) acquiring properties that were historically used for mushroom farming to reduce or limit the supply of fresh agaricus mushrooms, including by placing deed restrictions on the properties to prevent their future use as mushrooms farms?**

   YES  _X_            NO  _____

*If you answered "YES" to Question 1, proceed to Question 2.*

*If you answered "NO" to Question 1, do not answer any further questions. Have the foreperson sign the last page of this Verdict Form and notify the courtroom deputy that you have completed your deliberations.*

2

A2499

**VERDICT FORM**

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*, No. 15-cv-6480

*Your answer to each question must be unanimous.*

2. **Do you find, by a preponderance of the evidence, that any of the following Defendants participated in the above-described single overarching conspiracy to raise the prices of agaricus mushrooms?**

| | DEFENDANT | YES | NO |
|---|---|---|---|
| a. | Brownstone Mushroom Farms, Inc. | | X |
| b. | C&C Carriage Mushroom Co. | | X |
| c. | Country Fresh Mushroom Co. | | X |
| d. | Gino Gaspari & Sons, Inc. | | X |
| e. | Giorgi Mushroom Company | | X |
| f. | Kaolin Mushroom Farms, Inc. | | X |
| g. | Leone Pizzini and Son, Inc. | | X |
| h. | Louis M. Marson, Jr., Inc. | | X |
| i. | Modern Mushroom Farms, Inc. | | X |
| j. | Monterey Mushrooms, Inc. | | X |
| k. | Oakshire Mushroom Farms, Inc. | | X |
| l. | Phillips Mushroom Farms, Inc. | | X |
| m. | South Mill Mushroom Sales, Inc. | | X |
| n. | The Eastern Mushroom Marketing Cooperative, Inc. (EMMC) | X | |
| o. | To-Jo Fresh Mushrooms, Inc. | | X |
| p. | United Mushroom Farm Cooperative, Inc. | | X |

*If you answered "YES" to <u>any part</u> of Question 2, proceed to Question 3.*

*If you answered "NO" to <u>all parts</u> of Question 2, do not answer any further questions. Have the foreperson sign the last page of this Verdict Form and notify the courtroom deputy that you have completed your deliberations.*

A2500

**VERDICT FORM**

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*, No. 15-cv-6480

*Your answer to each question must be unanimous.*

3. **Do you find, by a preponderance of the evidence, that Defendant Oakshire Mushroom Farms, Inc. and Oakshire Mushroom Sales, LLC, satisfy the ownership and control exception the Court explained?**

   YES   X          NO  _____

*Regardless of your answer to Question 3, proceed to Question 4.*

4

A2501

**VERDICT FORM**

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*, No. 15-cv-6480

*Your answer to each question must be unanimous.*

4. **Do you find, by a preponderance of the evidence, that the single overarching conspiracy was anticompetitive such that it caused the price of fresh agaricus mushrooms to be higher than it would have otherwise been?**

YES _____          NO ___X___

*If you answered "YES" to Question 4, proceed to Question 5.*

*If you answered "NO" to Question 4, do not answer any further questions. Have the foreperson sign the last page of this Verdict Form and notify the courtroom deputy that you have completed your deliberations.*

A2502

**VERDICT FORM**

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*, No. 15-cv-6480

*Your answer to each question must be unanimous.*

5. **Do you find, by a preponderance of the evidence, that the single overarching conspiracy was unreasonable?**

YES _____            NO _____

*If you answered "YES" to Question 5, proceed to Question 6.*

*If you answered "NO" to Question 5, do not answer any further questions. Have the foreperson sign the last page of this Verdict Form and notify the courtroom deputy that you have completed your deliberations.*

6

A2503

**VERDICT FORM**

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*, No. 15-cv-6480

*Your answer to each question must be unanimous.*

6. **Do you find, by a preponderance of the evidence, that the single overarching conspiracy resulted in financial injury to Winn-Dixie in the form of overcharges paid for agaricus mushrooms?**

YES _____        NO _____

*If you answered "YES" to Question 6, proceed to Question 7.*

*If you answered "NO" to Question 6, do not answer any further questions. Have the foreperson sign the last page of this Verdict Form and notify the courtroom deputy that you have completed your deliberations.*

A2504

Case: 22-2289   Document: 20-5   Page: 294   Date Filed: 10/24/2022
Case: 22-2289   Document: 30   Page: 73   Date Filed: 12/07/2022
Case 5:15-cv-06480-BMS   Document 493   Filed 03/22/22   Page 8 of 9

**VERDICT FORM**

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*, No. 15-cv-6480

*Your answer to each question must be unanimous.*

7. If you previously found that any of the below Defendants joined the conspiracy, do you find, by a preponderance of the evidence, that they withdrew from the conspiracy? If you find that a Defendant withdrew, also indicate the date it withdrew.

    a. **Gino Gaspari & Sons, Inc.**

        **WITHDRWEW** _____      **DID NOT WITHDRAW** _____

        **DATE OF WITHDRAWAL** _____

    b. **Monterey Mushrooms, Inc.**

        **WITHDRWEW** _____      **DID NOT WITHDRAW** _____

        **DATE OF WITHDRAWAL** _____

    c. **Oakshire Mushroom Farms, Inc.**

        **WITHDRWEW** _____      **DID NOT WITHDRAW** _____

        **DATE OF WITHDRAWAL** _____

*Regardless of your answer to Question 7, proceed to Question 8.*

8

**VERDICT FORM**

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*, No. 15-cv-6480

*Your answer to each question must be unanimous.*

*Only answer Question 8 if you answered "YES" to Question 6 .*

8. Please state the amount of damages, if any, that you award to Winn-Dixie under the liability and damages instructions the Court gave you. In determining the amount of damages to award, you may only consider Winn-Dixie's mushroom purchases from approximately June 2004 through 2010 if you answered "YES" to Question 3.


$ _____


If you found that any Defendant(s) joined and then withdrew from the conspiracy, please state the portion of the total amount of damages that Winn-Dixie has established by a preponderance of the evidence resulting from the conspiracy's conduct while the Defendant(s) was/were still a member of the conspiracy, even if those damages were not incurred by Winn-Dixie until after the Defendant(s) left the conspiracy.

| DEFENDANT(S) | WITHDRAWAL DATE | AMOUNT |
|---|---|---|
| Gino Gaspari & Sons, Inc. | | |
| Monterey Mushrooms, Inc. | | |
| Oakshire Mushroom Farms, Inc. | | |
| United Mushroom Farm Cooperative, Inc. | 8/31/2005 | |


Thank you. Your deliberations are now complete. Please have the Foreperson sign and date this Verdict Form and notify the courtroom deputy that you have completed your deliberations.


_Edgar Lee_ _____          _21 Mar, 2022_
**JURY FOREPERSON**                    **DATE**

9

A2506

# ADDENDUM 2

| EMMC Member Company | State | Date First Membership Agreement Signed | Effective Date of First Resignation | Date Second Membership Agreement Signed | Effective Date of Second Resignation |
|---|---|---|---|---|---|
| Mushroom Alliance | PA | 1/9/2001 | 9/1/2002 | -- | -- |
| Country Fresh | PA | 1/9/2001 | 9/1/2002 | 9/26/2002 | -- |
| Creekside | PA | 1/9/2001 | 9/1/2002 | -- | -- |
| J-M Farms | OK | 1/9/2001 | 9/1/2002 | -- | -- |
| Kitchen Pride Mushrooms, Inc. | TX | 1/9/2001 | 9/1/2002 | -- | -- |
| M. Cutone Mushroom Co. | PA | 1/20/2001 | 9/1/2002 | -- | -- |
| M & T Mushrooms | PA | 1/26/2001 | 9/1/2002 | -- | -- |
| Franklin Farms, Inc. | CT | 1/10/2001 | 9/1/2003 | 1/6/2006 | 6/27/2006 |
| Harvest Fresh Farms, Inc. | PA | 1/9/2001 | 9/1/2004 | -- | -- |
| M. D. Basciani & Sons, Inc. | PA | 1/9/2001 | 9/1/2004 | -- | -- |
| Leone Pizzini & Son, Inc. | PA | 2/4/2001 | 9/1/2004 | -- | -- |
| W&P Mushroom Inc. | PA | 9/4/2002 | 9/1/2004 | -- | -- |
| Louis Marson, Jr., Inc. | PA | 1/9/2001 | 9/1/2005 | 5/5/2006 | 5/13/2009 |
| Modern Mushroom Farms, Inc. | PA | 1/9/2001 | 9/1/2005 | 1/10/2006 | 3/13/2010 |
| Kennett Shiitake (SH Guest Mushrooms) | PA | 4/23/2003 | 9/1/2005 | -- | -- |
| United Mushroom Farm Cooperative, Inc. | PA | 4/7/2003 | 9/1/2005 | -- | -- |
| Blue Mountain Mushroom | PA | 2/25/2005 | 9/1/2005 | -- | -- |
| Monterey Mushrooms, Inc. | CA | 1/9/2001 | 10/23/2005 | -- | -- |
| Gino Gaspari & Sons, Inc. | PA | 1/9/2001 | 4/29/2006 | -- | -- |
| LRP-Mushrooms, LLC | PA | 1/9/2001 | 5/31/2006 | -- | -- |
| Oakshire Mushroom Farm, Inc. | PA | 1/8/2001 | 5/31/2006 | -- | -- |
| Gourmet's Delight Mushroom Co., Inc. | PA | 3/14/2005 | 9/13/2007 | -- | -- |
| Forest Mushroom, Inc. | MN | 1/9/2001 | 1/10/2009 | -- | -- |
| Giorgi Mushroom Company | PA | 1/9/2001 | 4/29/2009 | -- | -- |
| Kaolin Mushroom Farm, Inc. | PA | 1/9/2001 | 11/9/2009 | -- | -- |
| Brownstone Mushroom Farms | PA | 1/9/2001 | 12/12/2009 | -- | -- |
| Cardile Mushroom, Inc. | PA | 1/9/2001 | 12/31/2009 | -- | -- |
| C. P. Yeatman | PA | 3/15/2005 | 1/10/2010 | -- | -- |
| Bella Mushroom Farms | PA | 2/13/2001 | 7/14/2019 | -- | -- |
| Phillips Mushroom Farms, Inc. | PA | 1/9/2001 | -- | -- | -- |

Notes: Kaolin Mushroom Farm, Inc. ("Kaolin") maintained an independent contract with the EMMC and also was a member of the Mushroom Alliance. When the Mushroom Alliance resigned from the EMMC in 2002, Kaolin remained a member through its individual contract. Cardile Mushroom, Inc. ("Cardile") ceased paying dues after 2009. Monterey Mushrooms, Inc. ("Monterey") is headquartered in California, but was a member of the EMMC due to its operations in the eastern U.S.

Sources: AMC-EMMC-0001; EMMC-00104; EMMC-00168 – 00182; EMMC-DOJ-00963 – 00976; EMMC-DOJ-00990 – 01224; EMMC-DOJ-01238 – 01263; EMMC-DOJ-02090 – 02098; EMMC-DOJ-02934 – 02946; PLF-000070; Deposition of Terry Jurgensmeyer, February 18, 2008 ("Jurgensmeyer Deposition"), p. 105; Deposition of Darrell McLain, April 18, 2008 ("McLain Deposition"), pp. 31-32; Deposition of John Pia, May 5, 2008 ("Pia Deposition"), p. 36; Deposition of Gary M. Schroeder, December 11, 2007 ("Schroeder Deposition"), pp. 140-141; and Excel file, "EMMC AMC Member History.xlsx".



DEFENSE EXHIBIT
WINN-DIXIE V. EMMC
D064