No. 22-2289

IN THE

# United States Court of Appeals
## for the Third Circuit

WINN-DIXIE STORES, INC., et al.,
*Plaintiffs-Appellants*,

v.

EASTERN MUSHROOM MARKETING COOPERATIVE, INC., et al.,
*Defendants-Appellees*.

———

On Appeal from the
United States District Court for the Eastern District of Pennsylvania
Honorable Berle M. Schiller
No. 5:15-cv-06480

———

**BRIEF FOR THE UNITED STATES OF AMERICA
AS *AMICUS CURIAE* IN SUPPORT OF PANEL REHEARING**

———

JONATHAN S. KANTER
    *Assistant Attorney General*
DOHA G. MEKKI
    *Principal Deputy Assistant
    Attorney General*
MAGGIE GOODLANDER
    *Deputy Assistant Attorney
    General*
DAVID B. LAWRENCE
    *Policy Director*
MARKUS A. BRAZILL
JACOBUS VAN DER VEN
    *Counsels to the Assistant
    Attorney General*

DANIEL E. HAAR
NICKOLAI G. LEVIN
STRATTON C. STRAND
ANDREW W. CHANG
    *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., NW,
    Room 3224
Washington, DC 20530-0001
(202) 894-4261

*Counsel for the United States*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................ ii

INTEREST OF THE UNITED STATES ............................................. 1

STATEMENT ..................................................................................... 1

    A. Legal Framework ..................................................................... 1

    B. Background .............................................................................. 2

ARGUMENT ...................................................................................... 4

   I.   Application of the Per Se Rule Was Forfeited ........................... 5

  II.   The Per Se Rule Governs the Conspiracy Described in the
        Panel Opinion ......................................................................... 6

    A. An Agreement Among Competitors To Fix Their Own
       or Downstream Prices Is Per Se Illegal ................................. 6

    B. Distributors' Participation Does Not Exempt a Horizontal
       Price-Fixing Conspiracy from Per Se Treatment ................... 8

CONCLUSION ................................................................................. 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF VIRUS PROTECTION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## <u>Cases</u>

*Barna v. Board of School Directors of Panther Valley School District*,
  877 F.3d 136 (3d Cir. 2017)................................................................5

*Business Electronics Corp. v. Sharp Electronics Corp.*,
  485 U.S. 717 (1988)............................................................................9

*California Dental Association v. FTC*,
  526 U.S. 756 (1999)............................................................................2

*Com-Tel, Inc. v. DuKane*,
  669 F.2d 404 (6th Cir. 1982).............................................................10

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984)............................................................................8

*In re Chocolate Confectionary Antitrust Litigation*,
  801 F.3d 383 (3d Cir. 2015)................................................................1

*In re Insurance Brokerage Antitrust Litigation*,
  618 F.3d 300 (3d Cir. 2010)...........................................................6, 7

*Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*,
  340 U.S. 211 (1951)............................................................................8

*Klor's, Inc. v. Broadway–Hale Stores, Inc.*,
  359 U.S. 207 (1959)............................................................................9

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007)..............................................................4, 11, 12

*Lifewatch Services Inc. v. Highmark Inc.*,
  902 F.3d 323 (3d Cir. 2018)............................................................6, 9

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
  806 F.3d 835 (5th Cir. 2015)............................................................12

*NCAA v. Board of Regents of the University of Oklahoma*,
  468 U.S. 85 (1984)..............................................................................6

ii

*NYNEX Corp. v. Discon, Inc.*,
   525 U.S. 128 (1998)...................................................................................9

*Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018) ..............................................................................1

*Standard Oil Co. v. United States*,
   221 U.S. 1 (1911) .....................................................................................1

*Toledo Mack Sales & Services, Inc. v. Mack Trucks, Inc.*,
   530 F.3d 204 (3d Cir. 2008).................................................................4, 11

*Toys "R" Us, Inc. v. FTC*,
   221 F.3d 928 (7th Cir. 2000).................................................................10

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015).................................................................9, 12

*United States v. Brown University*,
   5 F.3d 658 (3d Cir. 1993)......................................................................7

*United States v. General Motors Corp.*,
   384 U.S. 127 (1966)................................................................................9

*United States v. MMR Corp.*,
   907 F.2d 489 (5th Cir. 1990).................................................................9, 10

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940)...........................................................................7, 8, 9

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*,
   81 F.4th 323 (3d Cir. 2023)...........................................................*passim*

## Statutes

7 U.S.C. § 291 ............................................................................................2

15 U.S.C. § 1 ........................................................................................1, 2

## Rules

Fed. R. App. P. 29(b) ...............................................................................1

## INTEREST OF THE UNITED STATES

The United States enforces the federal antitrust laws and has a strong interest in their correct application. The United States submits this brief under Federal Rule of Appellate Procedure 29(b) to address the panel's discussion of the per se rule under Section 1 of the Sherman Act, which could have a significant impact beyond the instant case.

## STATEMENT

### A.    Legal Framework

Section 1 of the Sherman Act prohibits every contract, combination, or conspiracy that unreasonably restrains trade. 15 U.S.C. § 1; *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018) (citation omitted). Restraints "can be unreasonable in one of two ways." *Am. Express*, 138 S. Ct. at 2283.

*First*, some restraints are unreasonable per se based on their inherently anticompetitive "nature and character." *Standard Oil Co. v. United States*, 221 U.S. 1, 64-65 (1911). A price-fixing conspiracy among competitors is a "classic example of a restraint of trade analyzed under the *per se* standard." *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 395 (3d Cir. 2015).

*Second*, "[r]estraints that are not unreasonable per se are judged under the 'rule of reason,'" which entails "a fact-specific assessment" of the restraint's competitive effects. *Am. Express*, 138 S. Ct. at 2284 (citations omitted). Even under

the rule of reason, sometimes a "quick look" can demonstrate a restraint's anticompetitive effects, and "no elaborate industry analysis is required." *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770, 779-80 (1999).

### B.    Background

Mushroom growers typically sell mushrooms to distributors, who sell those mushrooms to retailers. *See Winn-Dixie Stores, Inc. v. E. Mushroom Marketing Coop.*, 81 F.4th 323, 329 (3d Cir. 2023) ("Op."). The Eastern Mushroom Marketing Cooperative ("EMMC") is a cooperative of mushroom growers in the Eastern United States. *Id.* at 328.[1]

Many of EMMC's member-growers have exclusive partnerships with "specific, often legally related downstream distributors." Op. 329. Distributors, however, are "prohibited from actually joining [EMMC]." *Id.* Thus, EMMC's rules apply directly only to its member-growers, not partnering distributors. *Id.*

In 2015, Plaintiffs-Appellants ("Winn-Dixie") sued EMMC, its members, and several downstream distributors under Section 1, alleging their participation in an "overarching" conspiracy to fix mushroom prices. Op. 328-30. The alleged conspiracy included EMMC's establishment of a policy under which EMMC would

---

[1] Although some grower associations enjoy limited antitrust protection under the Capper-Volstead Act, 7 U.S.C. § 291, the district court found such protection inapplicable here. That ruling was not challenged on appeal.

"circulat[e] minimum price lists" for mushroom sales, requiring its members to "uniformly charge those prices to all customers."[2] *Id.* at 328.

Winn-Dixie filed a pre-trial motion seeking "quick-look" scrutiny of the conspiracy. Op. 330. That motion was denied, and the jury subsequently returned a verdict for the defendants under the rule of reason—despite finding that EMMC participated in an "overall conspiracy" to "artificially increase mushroom prices." *Id.* Winn-Dixie appealed, asserting that the district court erred by failing to apply its "requested quick look." *Id.* at 331.

The panel unanimously affirmed. At different points in its opinion, the panel described the operation of the conspiracy differently. The panel initially described the conspiracy as fixing "***not the price at which [growers] sold the product***, but instead the price at which EMMC members hoped to coerce downstream distributors to go to market." Op. 328-29 (emphasis added). Elsewhere, however, the panel described the conspiracy as "an agreement by EMMC members ***to set the prices they themselves charged*** to vertically oriented distributors," in an "effort to boost the prices those distributors charged to retailers." *Id.* at 329 (emphasis added).

---

[2] The United States entered into a consent decree with EMMC in 2005 to enjoin its "Supply Control" campaign used to enforce the minimum-price agreement. *See* Final Judgment, *United States v. Eastern Mushroom Marketing Cooperative, Inc.,* No. 04-cv-5829, 2005 WL 3412412 (E.D. Pa. Sept. 9, 2005).

The panel ultimately held that the conspiracy—despite being an agreement among competing growers to fix prices—was not subject to per se or quick-look condemnation because the agreement fixed downstream prices and relied on participation by downstream distributors.  Op. 333-34.  The panel explained that the price-fixing conspiracy thus was a "hybrid scheme," somewhere "in between" a "purely horizontal" and "vertical" arrangement, and accordingly could not be deemed "obviously anticompetitive." *Id.*

The panel also characterized the scheme as involving "facilitating" vertical restraints between growers and distributors, emphasizing that for the scheme to work, member-growers had to make vertical agreements with non-member distributors.  Op. 333-34.  Citing *Leegin Creative Leather Products, Inc. v. PSKS, Inc.* 551 U.S. 877, 893 (2007), and *Toledo Mack Sales & Services, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 225 (3d Cir. 2008), the panel concluded that even if "each grower-distributor relationship formed to facilitate an upstream grower [conspiracy]," those "facilitating agreements must be analyzed under the rule of reason." *Id.* at 334.

## ARGUMENT

Longstanding precedent establishes that price-fixing conspiracies among competitors are per se unlawful.  Under the facts set forth in the panel opinion, the per se rule applies to the minimum-price conspiracy.

4

Winn-Dixie, however, opted not to press per se condemnation of the conspiracy.  Despite this forfeiture, the panel stated that "per se condemnation is simply not appropriate," Op. 334, in conflict with controlling precedent not addressed in its opinion.  Left uncorrected, the panel's analysis could be misconstrued to call into question long-established principles of antitrust law.

Although Winn-Dixie's previous arguments may limit the Court's ability to alter its judgment, the Court should order rehearing either to (i) state that the per se issue was forfeited and amend its opinion to avoid any conflict with controlling precedent *or* (ii) apply the per se rule.

## I.    Application of the Per Se Rule Was Forfeited

Winn-Dixie forfeited any argument for the per se rule by not raising it on appeal.[3]  The United States takes no position on whether the panel should excuse this forfeiture, *see Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147-48 (3d Cir. 2017), but urges the panel to at least make clear that the per se argument was not properly presented.  Otherwise, its opinion could be misread to suggest that a price-fixing conspiracy among competitors may evade per se condemnation if the conspirators recruit non-competing parties into their conspiracy

---

[3] Winn-Dixie opted out of a parallel class action (that settled before final judgment) in which the district court had held the per se rule inapplicable.

or fix prices elsewhere in the distribution chain.[4]   Both misreadings would depart from well-established law and implicate the government's ability to bring enforcement actions against similar conspiracies.

## II.    The Per Se Rule Governs the Conspiracy Described in the Panel Opinion

Because the parties litigated this case assuming that the per se rule did not apply, the panel did not have the benefit of briefing on several controlling precedents and authorities from other circuits.  Those decisions hold that an agreement among competitors to fix their own or downstream prices is per se illegal, regardless of whether the conspiracy also includes vertically-related parties.

### A.    An Agreement Among Competitors To Fix Their Own or Downstream Prices Is Per Se Illegal.

A horizontal agreement is "an agreement among competitors on the way in which they will compete with one another." *NCAA v. Bd. of Regents*, 468 U.S. 85, 99 (1984); *see Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 335 (3d Cir. 2018).[5]   Among horizontal agreements, the Supreme Court "has consistently and

---

[4] The United States likewise takes no position on the antecedent question of whether Winn-Dixie preserved its quick-look argument, or whether Winn-Dixie adequately established the other elements of a Section 1 claim, including proving injury from the alleged violation.

[5] By contrast, "vertical" restraints are "imposed by agreement between firms at different levels of distribution" on matters over which they do not compete. *In re Ins. Brokerage*, 618 F.3d 300, 318 (3d Cir. 2010) (citation omitted).

without deviation adhered to the principle that price-fixing agreements are unlawful per se." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940).[6] Price-fixing agreements include agreements "raising, depressing, fixing, pegging, or stabilizing" prices. *Id.* at 223.

Applying that definition here, the per se rule governs the minimum-price conspiracy. In certain passages, the panel opinion characterizes the conspiracy as fixing the prices that the grower-conspirators *themselves* charged. *See* Op. 329 (the conspiracy was an agreement to "set the prices [member-growers] themselves charged to vertically oriented distributors"). By that characterization, the conspiracy has no vertical element. Where "competitors at the same market level agree to fix or control the prices they will charge," that is horizontal price fixing. *See United States v. Brown University*, 5 F.3d 658, 670 (3d Cir. 1993). That definition plainly applies to the panel's description of the conspiracy as an "agreement among competitors (growers) to fix prices." *Id.* at 334.

Per se treatment remains appropriate even if, as the opinion elsewhere states, the conspiracy set "the price at which EMMC members hoped to coerce downstream distributors to go to market." Op. 328-29. An agreement between competitors is

---

[6] Although there is a defense to per se condemnation for "ancillary restraints," under which the rule of reason applies, *Ins. Brokerage*, 618 F.3d at 345, EMMC has not raised or established an ancillarity defense here.

7

horizontal even if its effects are directed downstream. Indeed, that same scenario was addressed in *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, where two liquor manufacturers conspired to fix downstream prices. 340 U.S. 211, 213-14 (1951), *overruled on other grounds by Copperweld Corp. v. Indep. Tube. Corp.*, 467 U.S. 752 (1984). The Court nevertheless held that the manufacturers' restraint was a horizontal combination "formed for the purpose of [fixing] the price of a commodity," and therefore "illegal per se." *Kiefer-Stewart*, 340 U.S. at 213.

### B. Distributors' Participation Does Not Exempt a Horizontal Price-Fixing Conspiracy from Per Se Treatment.

Despite concluding that the conspiracy consisted of an "agreement among competitors (growers) to fix prices," the panel held that the complexity of the business arrangements in this case—including the scheme's "dependence on downstream, non-EMMC members"—rendered the scheme a "hybrid," rather than horizontal, restraint. Op. 333-34. The Supreme Court has not recognized any such category of "hybrid restraints," and the panel's characterization of the conspiracy as not being horizontal because it was "hybrid" conflicts with controlling precedent.

Downstream distributors' participation in the conspiracy does not change the fact the conspiracy was horizontal—an agreement between competitors. In *Socony-Vacuum*, a foundational case on price-fixing, several vertically integrated oil companies agreed to purchase surplus gasoline at one market level to increase prices downstream, relying on the participation of co-conspirators at multiple levels of the

supply chain. 310 U.S. at 168-69, 213-14. The Court nevertheless concluded that, because the agreement "eliminat[ed] one form of competition" between competing oil companies (*i.e.*, price competition), the arrangement was a horizontal agreement subject to per se condemnation. *Id.* at 213; *see NYNEX v. Discon*, 525 U.S. 128, 133 (1998) (describing *Socony-Vacuum* as "finding [a] horizontal price-fixing agreement"); *Lifewatch*, 902 F.3d at 336 (same). The Supreme Court has since consistently affirmed that a horizontal conspiracy remains horizontal even if a vertically-related party participates. *United States v. Gen. Motors Corp.*, 384 U.S. 127, 145 (1966) (applying per se rule to horizontal price-fixing agreement, even though vertically related party policed the arrangement); *Klor's, Inc. v. Broadway– Hale Stores, Inc.,* 359 U.S. 207, 209 (1959) ("wide combination consisting of manufacturers, distributors and a retailer" engaged in per se illegal agreement); *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 n.4 (1988) (manufacturer's restraint resulting from horizontal agreement between distributors is horizontal, "not because it has horizontal effects, but because it is the product of a horizontal agreement").

Other circuits have followed suit. For example, *United States v. Apple*, 791 F.3d 290, 297 (2d Cir. 2015), held that a horizontal agreement between publishers, orchestrated by a "vertical organizer," was nevertheless a "horizontal conspiracy" subject to the per se rule. Likewise, *United States v. MMR Corp.*, 907 F.2d 489, 498

(5th Cir. 1990), held that for purposes of the per se rule, where "there is a horizontal agreement between [competitors], there is no reason why others joining that conspiracy must be competitors." Similarly, *Com-Tel v. DuKane*, 669 F.2d 404, 409 n.6, 412 (6th Cir. 1982), held that a manufacturer's restraint to effectuate a horizontal dealer boycott was horizontal. And *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 936 (7th Cir. 2000), held that the "essence" of an agreement between competitors that also involved a vertical organizer "was horizontal."

The panel's decision cannot be reconciled with these cases. Regardless of the parties' disagreement regarding the extent of the growers' ownership over the distributors, the facts set forth in the opinion make clear that under the alleged conspiracy, competing growers agreed to fix prices by leveraging their relationships with, or ownership of, their affiliated distributors (rather than compete amongst themselves). This scheme benefited the conspirators through higher prices paid to their related distributors and raised prices "in the marketplace as a whole." Op. 329. As in the cases above, neither the fact that some of the growers were vertically-integrated entities, nor the fact that the agreement relied on participation by distributors, alters the agreement's horizontality. If anything, the inclusion of

*competing* distributors in a grower conspiracy makes this conspiracy worse by engendering price collusion at *two* levels.

In concluding otherwise, the panel relied principally on dictum in *Leegin*— later cited in *Toledo Mack*, 530 F.3d at 225—that, "[t]o the extent a vertical agreement setting minimum resale prices is entered upon to facilitate [a horizontal conspiracy]," it "would need to be held unlawful under the rule of reason." 551 U.S. at 893; *accord* Op. 332. But that dictum suggests only that a party who enters into a separate vertical agreement facilitating a horizontal price-fixing conspiracy, *but who does not itself join that horizontal price-fixing conspiracy*, is subject to full rule-of-reason liability.

In *Toledo Mack*, a Mack truck dealer challenged two agreements: (i) a "horizontal agreement among [Mack] dealers" barring price competition, and (ii) a "vertical agreement" between a *single* entity—Mack—and its dealers denying discounts to dealers that competed on price. 530 F.3d at 218-19. The court applied the rule of reason *only to the vertical agreement* because Mack had not joined the horizontal conspiracy between the dealers. *Id.* at 221. This case is materially different because, here, Winn-Dixie alleged—and the panel acknowledged—that distributors joined the horizontal conspiracy among growers as *co-conspirators*. Op. 333.

11

Neither *Leegin* nor *Toledo Mack* suggests that a horizontal price-fixing conspiracy escapes per se condemnation because it is facilitated in part by vertical co-conspirators.  Indeed, immediately before the sentence on which the panel relied, *Leegin* stated that horizontal price-fixing conspiracies are "*per se* unlawful."  551 U.S. at 893.  It would be odd to read the following sentence as an end-run around this well-established proposition, and various courts have rejected such a reading.  *See, e.g.*, *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 849-50 (5th Cir. 2015) (*Leegin* did not "silently overrule[]" horizontality precedent); *Apple*, 791 F.3d at 324 (same).

## CONCLUSION

The panel should grant rehearing.  If the panel excuses Winn-Dixie's forfeiture of the per se argument, the panel should hold the per se rule applicable to the conspiracy.  Otherwise, the panel should clarify that application of the per se rule was forfeited and therefore not properly before it and amend its opinion as necessary to avoid conflicting with the above-cited precedent.  Finally, if it would aid the panel's analysis, the panel should order supplemental briefing.

Respectfully submitted,

s/ Andrew W. Chang

JONATHAN S. KANTER
    *Assistant Attorney General*
DOHA G. MEKKI
    *Principal Deputy Assistant*
    *Attorney General*
MAGGIE GOODLANDER
    *Deputy Assistant Attorney*
    *General*
DAVID B. LAWRENCE
    *Policy Director*
MARKUS A. BRAZILL
JACOBUS VAN DER VEN
    *Counsels to the Assistant Attorney*
    *General*
DANIEL E. HAAR
NICKOLAI G. LEVIN
STRATTON C. STRAND
ANDREW W. CHANG
    *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., NW, Room 3224
Washington, DC 20530-0001
(202) 894-4261

*Counsel for the United States*

November 20, 2023

13

## CERTIFICATE OF COMPLIANCE

1.   I certify that this amicus curiae brief complies with the type-volume limit of Fed. R. App. P. 29(b)(4) because, excluding the parts exempted by Fed. R. App. P. 32(f) and Circuit Rule 29.1(b), the brief contains 2,583 words.

2.   I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in Microsoft Word for Microsoft 365, using 14-point Times New Roman font, a proportionally spaced typeface.

3.   I further certify that this brief complies with Third Circuit Local Rule 31.1(c) because the text of the electronic brief is identical to the text in any paper copies.

November 20, 2023

    /s/ Andrew W. Chang
*Counsel for the United States*

# CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Rules 28.3(d), 46.1(e), and 113.2(a), I certify

that I represent the United States and thus am not required to be a member of the bar

of this Court.

November 20, 2023

    /s/ Andrew W. Chang

*Counsel for the United States*

# CERTIFICATE OF VIRUS PROTECTION

Pursuant to Third Circuit Local Rule 31.1(c), I certify that Windows Defender has been run on this file and that no virus was detected.


November 20, 2023

___/s/ Andrew W. Chang___
*Counsel for the United States*

## CERTIFICATE OF SERVICE

I certify that on November 20, 2023, I caused the foregoing to be filed through this Court's CM/ECF system, which will serve a notice of electronic filing on all registered users, including counsel of record for all parties.


November 20, 2023

    /s/ Andrew W. Chang  
*Counsel for the United States*
